INNOVATION MARKETING,
et al., Plaintiffs,

v.

TUFFCARE INCORPORATED,
Defendants.

No. 98–1661 (DRD).

United States District Court,
D. Puerto Rico.

Nov. 24, 1998.

Fernando L. Gallardo, Woods & Woods, San Juan, PR, for Plaintiffs.

Aryuor Negron-Garcia, Hato Rey, PR, Mirta E. Rodriguez–Mora, Montijo & Morales, Hato Rey, PR, for Defendants.

### OPINION AND ORDER

DOMINGUEZ, District Judge.

The above captioned case is a cause of action of a Sales Representative against a principal, seeking damages and an interim statutory injunctive relief pending litigation duration under local Law 21 of 1990, P.R.Laws Ann. tit. 10 § 279 et seq.

Pending before the Court is Plaintiffs' motion for the issuance of a provisional stat-utory injunction pending litigation outcome pursuant to the Puerto Rico Sales Representatives Act, 10 L.P.R.A. § 279(e), (Docket No. 2). A hearing was held on the matter on August 4, 1998, (Docket No. 10). This Court issued an order for the parties to file corresponding memoranda of law in support and against said request for injunctive relief. Plaintiff and defendants complied with the request of the court, (Dockets nos. 8 and 9). After, carefully reviewing the parties memoranda of law and the transcripts of the hearing held before this Court, for the reasons stated below in this Opinion and Order, Plaintiffs' Motion for the issuance of a provisional statutory injunction pursuant to the Puerto Rico Sales Representatives Act, 10 L.P.R.A. § 279(e) is **DENIED.**

### FACTUAL BACKGROUND

On or about September, 1997, co-Plaintiff, Mr. Jesus García Arce ("García") d/b/a Innovation Marketing ("Innovation"), was contacted by Mr. Carvin Chang ("Chang"), Vice President of Defendant Tuffcare, Inc., ("Tuffcare"), to explore the possibility that Innovation sell Tuffcare products in Puerto Rico, after it had terminated its business relationship with a corporation by the name of Graham Field, Inc. (Tr. p. 11). On October, 1997 García met in San Juan with Chang and his brother to discuss their future business relationship. (Tr. pp. 16–17). In that meeting, Chang and García discussed the possibility that Innovation become Tuffcare exclusive sales representative in Puerto Rico. In García's version the condition was if Innovation could meet its projected sales of two million dollars the first year. In Chang's version Innovation had to sell $6,000,000.00 dollars a year. (Tr. pp. 17, 96–97).

After discussing the details of setting up the minimum operation for the sales and marketing of Tuffcare products in Puerto Rico and the percentage commissions to be earned by Innovation, García requested that Tuffcare reduce to writing the terms and conditions of their agreement, especially the clause regarding the exclusivity of Innovation as sales representative, since according to García, in his ample experience of twenty

years in the field, ... "if it is an exclusive relationship ... it is always written down". (Tr. pp. 18, 22, 75).

On or around October 16, 1997, García received by fax the standard sales agreement submitted by Tuffcare to all its sales representatives in the United States, with Innovation's name and address incorporated therein. García read and signed the contract, and returned the same duly signed by fax and by mail to Tuffcare. (Tr. pp. 24, 26, 67, 103). Although García requested that the contract be returned signed, the contract was never returned signed by Tuffcare to García. (The court notwithstanding understands that the parties entered into an agreement under said unsigned document as they both performed under the same.)

García on behalf of Innovation performed the following activities for Tuffcare, for which he submitted an unitemized invoice for $5,000.00 dollars: (a) García delivered to Chang a list of local attorneys from the Yellow Pages although he did not know any of the attorneys; (b) sent information about hotels in Puerto Rico but did not make any reservations; (c) assisted Tuffcare in finding a warehouse in Caguas, Puerto Rico; (d) did a marketing research for Tuffcare and projected sales of over two million dollars during the first year although no Master Plan of Sales was ordered; (e) sold Tuffcare products and delivered them from December 1997 to March 1998 in the total amount of less than one hundred fifty thousand dollars. (Tr. pp. 67–68, 71, 79–82). Tuffcare delivered its products to Innovation for resale to clients in Puerto Rico.

Notwithstanding that Innovation's sales were consistently well below the projected expectation of Tuffcare of six million dollars a year (even below the two million sales projected by Innovation), Tuffcare did not terminate the business relationship. Rather, on March, 1998, Mr. Chang informed Mr. García that Plaintiff could remain selling Tuffcare products on a non-exclusive basis and that Innovation could direct its orders

through Medex, a wholly owned subsidiary of Tuffcare Incorporated. (Tr. pp. 85, 99, 134–135).

Notwithstanding the above, Innovation **voluntarily abandoned** the Tuffcare line on March, 1998. (Tr. pp. 85–86). Approximately **three months** later, on June 10, 1998, Plaintiffs filed the complaint in the instant case, along with a petition for injunctive relief.

### LEGAL STANDARD UNDER LAW 21

Plaintiffs cause of action is under local Law 21, P.R.Laws Ann. tit. 10, § 279 et seq. The statute prohibits a principal from terminating its agreement with an exclusive sales representative without just cause. P.R.Laws Ann. tit. 10, § 278 (1976). Law 21 is modeled after the Dealer's Contract Law, also known as Law 75, and it is well settled that applicable jurisprudence to Law 75 is also of application in controversies as per Law 21.[1] Law 75 was designed to protect Puerto Rican "dealers" from a manufacturer's arbitrary termination or ending their commercial relationship with the Puerto Rican distributors who had prior thereto developed a market for their products. *Medina & Medina v. Country Pride Foods, Ltd.*, 858 F.2d 817, 820 (1st Cir.1988) (Puerto Rico Supreme Court response to certified question, 122 P.R.D. 172 (1988)). Pursuant to Law 75, a manufacturer cannot terminate its agreement with a dealer except for "just cause." P.R.Laws Ann. tit. 10, § 278a (1976). A scheme to compensate dealers terminated without just cause was enacted under Law 75, P.R.Laws Ann. tit. 10 § 278(b).

Resembling Law 75, Law 21 protects Puerto Rico sales representatives from arbitrary terminations after they create a market for their principals. An essential element of a Law 21 claim is the existence of an **"exclusive sales representation contract"** entered after December 5, 1990. P.R.Laws Ann. tit. 10, § 279 (1991). When the Puerto Rico Legislature enacted the Sales Representative Act of 1990 (Act 21), in the Statement of

---

1. The statement of motives of the law, Law of P.R., Dec. 5, 1990, No. 21 at 1496, clearly states that the motive of the law is to protect sales representatives who fell short of compliance with dealership status under local law as defined by the Supreme Court in the case of *Roberto Inc. and Roberto Colón v. Oxford Industries*, 122 P.R.D. 115 (1988).

Motives, Laws of Puerto Rico (infra Fn. 1), it expressed that this statute was meant to protect sales representatives—who "**assume all the operational costs which such representation entails, such as the *cost of maintaining an office, exhibition rooms, cars, office personnel, phones, electricity, water, insurance, travel costs, representation costs, office supplies and municipal patents* **"—from termination without just cause. Id.

Law 21 defines a sales representative as "an independent entrepreneur who establishes a sales representation contract of an **exclusive** nature, with a principal or grantor, and who is assigned a specific territory or market, within the Commonwealth of Puerto Rico." P.R.Laws Ann. tit. 10, § 279(a). The law fails to define when a sales representative relationship is considered "exclusive," and local courts have yet to interpret its meaning. However, when interpreting contracts pursuant to Act 75, courts have noted that exclusivity is generally apparent either from the contract or from the arrangements agreed upon between the parties. *Ballester·Hermanos, Inc. v. Campbell Soup*, Co., 797 F.Supp. 103, 105 (D.Puerto Rico 1992); *R.W. Intern. Corp. v. Welch Food, Inc.*, 13 F.3d 478 (1st Cir.1994).

In *Triangle Trading Co., Inc. v. Robroy Industries, Inc.*, 952 F.Supp. 75, 78 (D.Puerto Rico 1997), the Court explained that "[t]he forgoing legal provisions clearly reflect that the determination of whether a particular plaintiff is a 'dealer' under Act 75, or a sales representative under Act 21, is essentially a fact-specific one, which can rarely be rendered based on the pleadings alone." Moreover, the First Circuit Court in *Borschow Hospital and Medical Supplies, Inc. v. Cesar Castillo*, 96 F.3d 10 (1st Cir.1996), stated that "[a]lthough 'non-exclusive distributors are entitled to protection under Law 75,' [i]t is equally true ... that Law 75, does not operate to convert non-exclusive distribution contracts into exclusive distribution contracts." *Id.* at 14 (citing *General Office Products v. Gussco Manufacturing, Inc.*, 666 F.Supp. 328, 331, and *Vulcan Tools of Puerto Rico v. Makita U.S.A., Inc.*, 23 F.3d 564, 569 (1st Cir.1994)). Furthermore, the Court in *Bor-*

*schow, supra* at 14, citing *Vulcan Tools of Puerto Rico v. Makita*, 23 F.3d 564, 569 (1st Cir.1994), explained that "the 'established relationship' between dealer and principal is bounded by the distribution agreement, and therefore the Act only protects against detriments to contractually acquired rights."

"If the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed." *Borschow Hospital and Medical Supplies, Inc. v. Cesar Castillo*, 96 F.3d 10, 14 (1st Cir.1996), P.R.Laws Ann. tit. 31, § 3471 (1991). "Under Puerto Rican law, an agreement is 'clear' when it can 'be understood in one sense alone, without leaving any room for doubt, controversies or difference of interpretation....' " *Executive Leasing Corp. v. Banco Popular de Puerto Rico*, 48 F.3d 66, 69 (1st Cir.) (quoting *Catullo v. Metzner*, 834 F.2d 1075, 1079 (1st Cir.1987)), *cert. denied*, 516 U.S. 861, 116 S.Ct. 171, 133 L.Ed.2d 112 (1995); *see also Heirs of Ramirez v. Superior Court*, 81 P.R.R. 347, 351 (1959). Where contractual term providing for "non-exclusive" distributorship was clear and unambiguous, there is no need to consider extrinsic evidence of promise to limit number of distributors even absent contractual integration clause. *Vulcan Tools*, 23 F.3d at 564–68. It is well settled law that where a contract is unambiguous, its literal meaning must be applied. P.R.Laws Ann. tit. 31, § 3471.

▮ Article 6 of Law 21, P.R.Laws Ann. tit. 10, § 279(e) (1990) provides a sales representative with a provisional remedy pending litigation to continue in all its terms, the relation established by the sales representative agreement and/or to abstain to conduct any act or omission in prejudice thereof. As a matter of law, trial courts under the First Circuit Court of Appeals considering granting preliminary injunctive may use in considering the injunctive relief the "quadripartite" test as established in *Narragansett Indian Tribe v. Guilbert*, 934 F.2d 4, 5 (1st Cir.1991): (a) likelihood of success on the merits; (b) irreparable injury; (c) injury outweighs any harm the relief could inflict respondent; (d) public interest will not be adversely affected. See generally *A.M. Capen's Co., Inc. v.*

*American Trading and Production Corporation,* 74 F.3d 317, 322–23 (1st Cir.1996) (authorizing the use of the test in a Law 75 claim).

## DISCUSSION

■ The crux of the controversy at bar lies on whether Innovation and Tuffcare contracted for a "non-exclusive" or "exclusive" sales representation contract. If the former is determined, Innovation cannot prevail on its claim under Law 21 because by disposition a sales representative must be an "exclusive" representative; further Tuffcare may not be barred from distributing and selling its products to other representatives. *See Vulcan Tools,* 23 F.3d at 569 (Law 75 did not prevent supplier from establishing additional distributorships in Puerto Rico where non-exclusive distributor was already operating even if existing distributor suffered economic harm as result); *Nike Int'l Ltd. v. Athletic Sales, Inc.,* 689 F.Supp. 1235, 1238–39 (D.P.R.1988) (where distributorship contract between Nike and distributor provided for notice of renewal from distributor and distributor failed to provide such notice, Law 75 did not bar termination of distributorship contract).

The aforementioned caselaw effectively rebuts Innovation's main contention of exclusivity, since the sales representation agreement clearly and unambiguously provides Innovation the opportunity to sell Tuffcare products and further, contains no term granting or even implying exclusivity. (See Appendix "A"—Contract.) The agreement signed by Innovation is the standard sales representative agreement that Tuffcare executes in all 50 states of the United States, which this court interprets as a non-exclusive contract. Innovation's agent, co-plaintiff García, a sales representative with over twenty years of experience, expressed that in the industry, if the sales agreement were to be on an exclusive basis, it would be stated explicitly. García, fully aware of this, nonetheless signed the document, with full knowledge that it was

as drafted a non-exclusive contract simply because there is no hint whatsoever establishing an "exclusive" arrangement. Mr. García, in fact, acknowledged the non-exclusive nature by alleging an extrinsic verbal amendment to the contract.

As expressed before, it is a well settled doctrine of Puerto Rican law that where a contract is unambiguous, its literal meaning must be applied. P.R.Laws Ann. tit. 31, § 3471. Moreover, Innovation actually requested an exclusivity clause that was not included in the contract, and its agent, García, notwithstanding the obvious absence of said clause proceeded to sign the agreement. The contract gives no support whatsoever to Innovation's claim of exclusivity. Failing to demonstrate exclusivity from the face of the contract, Innovation relies on the extrinsic testimony of Co–Plaintiff García that the terms and conditions were modified verbally by Tuffcare, through Mr. Chang. However, Mr. Chang testified that he would grant an exclusive contract to Innovation contingent upon compliance with minimum quantities of sales. When the minimum of sales was not reached, or rather the numbers were consistently and well below expectations, Tuffcare did not provide the exclusivity to Innovation and proceeded to market its products directly through Medex and through another representative.[2]

■ In interpreting the substantive terms of parole evidence, the Puerto Rico Supreme Court has expressly established that "[t]he strict mandate of the cited art. 1233[3] obliges us to abide by the literal meaning of the terms of the contract when, as in the present case, they leave no doubt as to the intention of the contracting parties." *Marina Ind. Inc. v. Brown Boveri Corp.,* 114 P.R.Dec. 64 (1983) (official translation). In rejecting the same argument made today by Innovation, the Court in *Borschow, supra,* applied this principle stated in *Executive Leasing Corp., supra,* expressing that: " . . . to consider extrinsic evidence at all, the court must first

**2.** The court was somewhat troubled with certain evidence implying potential antitrust violations (sale of the same products to resale competitors by the principal at different prices, 15 U.S.C.A. § 13).

**3.** P.R.Laws Ann. tit. 31, § 3471.

find the relevant terms of the agreement unclear." When the requirement was not met the district court went no further. 48 F.3d at 69 (excluding extrinsic evidence of exclusive dealing condition and of "actual practice" of parties); *accord Hopgood,* 839 F.Supp. at 106 (explaining that *Marina* supports the principle that under Article 1233 the clear terms of the contract are the "embodiment of the indisputable intent of the parties as they entered into the contract"). This court follows the mandate of *Executive Leasing Corp.,* supra, and will not consider extrinsic evidence because the agreement is clear.

■ There is a further substantive reason for the court not to entertain verbal amendments to the contract. The relationship established under Law 75 is analogous to the relationship under Law 21 (sales representation of products and distribution of products, see Motives of Law 21 at the 4th Regular Session, 11 Legislature of 1990, p. 1496). The relationship under Law 75 is a relationship governed by the Commerce Code, *Pacheco v. National Western Life Insurance Co.,* 122 P.R.D. 55 (1988); *Vulcan Tools of Puerto Rico,* 23 F.3d at 567, n. 4; it follows that the relationship of representatives and principals under Law 21 is also governed by the Commerce Code because said agreement is a commercial contract. The Commerce Code requires that essential elements of a contract be confirmed in writing. *Vila & Hnos., Inc. v. Owens Ill. De P.R.* 17 P.R. Official Trans. 987 997–1000 (1986); *Garita Hotel Limited Partnership v. Ponce Federal,* 122 F.3d 88, 89 (1st Cir.1997). The exclusivity clause is undoubtedly an essential covenant of the agreement and there is no written corroboration of said clause. Verbal evidence under the Commerce Code is insufficient at law without corroboration. *Garita Hotel v. Ponce Federal Bank, F.S.B.,* 954 F.Supp. 438, 452–455 (D.P.R.1996), aff'd. at 122 F.3d 88 (1st Cir.1997).

■ In the instant case, this Court does not need to go any further, the sales agreement between Tuffcare and Innovation does not sound exclusive in nature, and the remedial provisions of Law 21 may not operate to convert non-exclusive contracts into exclusive contracts. *See generally, Borschow, supra; Vulcan, supra* and *Gussco, supra.*

■ Even considering the facts of this case under the more stringent quadripartite test as established in *Narragansett Indian Tribe v. Guilbert,* 934 F.2d 4, 5 (1st Cir.1991), reiterated at *A.M. Capen's v. American Trading & Prod. Corp.,* 74 F.3d 317, 322 (1st Cir.1996), the likelihood of success on the merits factor is doubtful at best, since the short lived sales agreement did not provide Innovation with an explicitly right to sell Tuffcare products on an "exclusive basis." Further, even assuming that this court would accept Plaintiff's extrinsic evidence to clarify the contract, the court does not credit García's statements that the contract was modified to become "exclusive" simply because García stated that this type of covenant is usually written. The second factor of the test, the claim of irreparable injury; cannot be invoked by Innovation, as they chose to unilaterally terminate the agreement with Tuffcare out of their own volition. Law 21, as well as the traditional tort and breach of contract actions, provide ample remedy for Plaintiff to compensate for damages if it is ultimately found that the principal terminated their established relationship without just cause and if Plaintiff is deemed an "exclusive representative." In the instant case, the third factor as to whether the claimed injury outweighs any harm the relief could inflict to the respondent, requires the Court to balance the relevant equities. If the preliminary injunction is granted in the instant case the same would cause considerable harm to the defendant Tuffcare, as it would provoke noncompliance of a prior stipulation reached with another sales representative, Graham–Field, Inc., in civil case number 98–1306(DRD). (Graham–Field, Inc. was a representative of Tuffcare products in Puerto Rico prior to Plaintiff).

Finally, the relationship of Plaintiff with Defendant was short-lived, December 1997 to March 1998, barely four months, an injunctive remedy potentially lasting various months of litigation seems to the court an excessive and unwarranted remedy considering that there is at least doubts as to "exclusivity" of the relationship and further consid-

ering that the prior representation, Graham–Field, Inc. and Tuffcare would be affected because they would then not be able to comply with a stipulation entered in their case prior to the filing of this case meaning that public interest would be adversely affected. Hence, the court in examining the *Narrangensett* criteria for entering a preliminary injunction has serious doubts as to Plaintiff's eventual success on the merits, (Plaintiff is not an "exclusive" representative), the irreparable remedy compliance (Plaintiff abandoned the line), and that granting of the remedy would adversely affect the public interest. (A court stipulation with a prior representative would be impaired.)

## CONCLUSION

**WHEREFORE,** after careful review of the record before the court and the applicable caselaw and statutes, Plaintiffs' Motion for the issuance of a provisional statutory injunction pursuant to the Puerto Rico Sales Representatives Act, 10 L.P.R.A. § 279(e) is **DENIED.**

**IT IS SO ORDERED.**

EXHIBIT 1

3999 E. LA PALMA AVENUE, ANAHEIM, CA 92807
TEL: (714) 632-3999 • FAX: (714) 632-3998

## SALES AGREEMENT

THIS AGREEMENT BETWEEN TUFFCARE, LOCATED AT 3999 E. LA PALMA AVE., ANAHEIM, CALIFORNIA 92807 (REFER HEREIN AS THE COMPANY) AND _____ INNOVATION MARKETING INC. _____,

LOCATED AT: _____ H-8   8 STREET PUNTO ORO • PONCE, PUERTO RICO 00731 _____,
(REFER HEREIN AS THE REPRESENTATIVE) IS SUBJECT TO THE FOLLOWING TERMS AND CONDITIONS:

1) THE REPRESENTATIVE IS AUTHORIZED TO PROMOTE AND SELL PRODUCTS MANUFACTURED BY THE COMPANY IN THE FOLLOWING STATES: _____
   _____ PUERTO RICO _____.

2) THE REPRESENTATIVE AGREED TO PROMOTE AND SELL WHEELCHAIRS. HOME CARE BEDS. PATIENT CARE PRODUCTS AND RELATED PRODUCTS ONLY FOR THE COMPANY.

3) THE REPRESENTATIVE WILL RECEIVE COMMISSION OF 6% ON REGULAR PRICING WITH FREIGHT COLLECT, 5% ON REGULAR PRICING WITH FREIGHT PREPAID.

4) COMMISSION WILL BE PAYABLE ON THE 15TH OF EACH MONTH ON THE ORDERS THAT HAVE BEEN SHIPPED ON THE PREVIOUS MONTH. COMMISSION ON UNCOLLECTABLE INVOICES AND RETURNED ORDERS SHALL BE DEDUCTED FROM FUTURE COMMISSION DUE.

5) THE REPRESENTATIVE AGREE TO HELP IN COLLECTION OF PAST DUE ACCOUNTS.

6) THIS AGREEMENT CAN BE TERMINATED BY EITHER PARTIES WITH WRITTEN NOTICE.

TUFFCARE                          _____ INNOVATION MARKETING INC. _____

                                                          OCT 16, 1997
_____   DATE   _____   DATE
BOB SNIDER                           JESUS GARCIA
REGIONAL SALES MANAGER               SALES DIRECTOR

CC/IgCCINNOVATION                                    000005