**CARIBE INDUSTRIAL SYSTEMS, INC., Plaintiff,**

**v.**

**NATIONAL STARCH AND CHEMICAL COMPANY, et al., Defendants.**

No. Civ. 97–2439(PG).

United States District Court, D. Puerto Rico.

Feb. 23, 1999.

Eric Pérez–Ochoa, Hato Rey, P.R., for plaintiff.

Jaime E. Toro–Monserrate, San Juan, P.R., for defendants.

## OPINION & ORDER

PEREZ–GIMENEZ, District Judge.

On September 29, 1997, plaintiff Caribe Industrial Systems, Inc.'s (hereinafter referred to as "Caribe") filed a complaint against several defendants, including National Starch and Chemical Company's (hereinafter referred to as "National"), claiming damages and requesting the issuance of provisional relief pursuant to the Puerto Rico Dealer's Act of June 24, 1964 ("Law 75"), P.R.Laws Ann. tit. 10 § 278 *et seq.* Pending before this Court is National's motion to dismiss (Dkt.è12, 20, 21), and Caribe's opposition to said motion. (Dkt.è15, 24). For the reasons explained below, the Court finds that the plaintiff has failed to show that it has a cause of action upon which relief can be granted.

## I. The Motion to Dismiss Standard

A motion to dismiss under Rule 12(b)(6) may be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Roma Constr. v. aRusso,* 96 F.3d 566, 569 (1st Cir.1996). The Court must accept as true the factual averments contained in the complaint, indulging every reasonable inference in favor of plaintiff. *Albright v. Oliver,* 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), *reh'g denied,* 510 U.S. 1215, 114 S.Ct. 1340, 127 L.Ed.2d 688. *See also Garita Hotel Ltd. Partnership v. Ponce Fed. Bank. F.S.B.,* 958 F.2d 15, 17 (1st Cir.1992). Thus, the trial judge is required to look only to the allegations of the complaint and if under any theory they are sufficient to state a cause of action, the motion must be denied. *See Knight v. Mills,* 836 F.2d 659, 664 (1st Cir.1987).

## II. The Facts from the Plaintiff's Point of View

Caribe is a local distributor engaged, among other things, in the marketing, selling and distribution of industrial packaging machinery and consumables, including hot melt adhesive products. National is the manufacturer of, among other things, hot melt adhesive products that are marketed and sold through a network of distributors. On August 1, 1983, Caribe and National entered into a "Distributor Agreement," whereby National agreed to supply and Caribe agreed to distribute National's products in the designated territory. Subsequently, Caribe promoted, advertised, sold and distributed National's products in Puerto Rico.

On or about March of 1997, Checkpoint Systems, Inc. (hereinafter referred to as "Checkpoint"), one of Caribe's main clients in Puerto Rico, informed Caribe of its intention to locally manufacture the adhesives that so far it had been purchasing from Caribe since 1993. Caribe unsuccessfully attempted to persuade Checkpoint not to manufacture its own adhesives and to continue purchasing them instead from Caribe. Despite Caribe's efforts, negotiations between Caribe and Checkpoint broke apart sometime around March 26, 1997, because Checkpoint had supposedly already ordered equipment to manufacture adhesives.

When Caribe notified National of Checkpoint's intentions, National expressed skepticism of Checkpoint's ability to manufacture

its own adhesives. Based on said skepticism, Caribe believed that its sales volume would ultimately not be affected by Checkpoint's plans. However, by May of 1997, National's skepticism had vanished due to the fact that Checkpoint seemed to indeed have the capacity to manufacture its own adhesives satisfactorily. Soon thereafter, Checkpoint notified Caribe that it would no longer be buying adhesives from Caribe beyond June 30, 1997, since Checkpoint had reached an agreement in which National was going to supply its products directly to Checkpoint without any intermediary such as Caribe. After several fruitless meetings between Caribe and National triggered by Caribe's loss of the Checkpoint account, Caribe filed the present action.

## III. *Discussion*

Caribe's opposition to National's motion to dismiss boils down to the following progression: (1) Even if Caribe has a non-exclusive distributorship agreement with National, National cannot sell *directly* to Caribe's clients. (2) Checkpoint would have never ceased purchasing adhesives from Caribe had National never offered them directly to Checkpoint. (3) National's appropriation of Caribe's clientele violates Puerto Rico's Law 75. Since the second step of the progression is inherently a question of fact, for purposes of resolving this motion to dismiss it shall be assumed that had it not been for National's direct selling efforts, Checkpoint would have remained as Caribe's customer.

The Puerto Rico Legislature enacted Law 75 believing that traditional contract-law principles had not afforded local dealers adequate protection from arbitrary dealer-contract terminations by larger, primarily mainland-based principals which normally enjoy a superior bargaining position. [Citation omitted][1] The Legislature therefore prohibited a principal from unilaterally terminating an established dealership "except for just cause." *See* P.R.Laws Ann. tit. 10, § 278a.

R.W. Int'l Corp. v. Welch Foods, Inc., 88 F.3d 49, 51–52 (1st Cir.1996). In the case at bar, Caribe acknowledges that National has not terminated the distribution contract signed by representatives of both organizations back in 1983. Caribe argues, however, that National's direct selling in Puerto Rico constitutes an unjustified act detrimental to the established relationship between both entities.

Caribe does not dispute the fact that it is a "non-exclusive" distributor of National's products. *See* Plaintiff's Opposition to Motion to Dismiss at 6 (Dkt.# 15). Caribe also seems willing to admit that National has the right to appoint other distributors to sell its products in Puerto Rico since the agreement between National and Caribe is "non-exclusive." Yet, Caribe vehemently contends that National's prerogative to assign other distributors the task of selling its products in Puerto Rico is not the same as having the right to sell its products directly to customers bypassing distributors such as Caribe. Therefore, the issue before this Court is whether a non-exclusive distribution agreement under Law 75, although flexible to allow multiple distributors, nevertheless forbids the principal from supplying its products directly to the customers of its own distributors.

"[T]he 'established relationship' between dealer and principal is bounded by the distribution agreement, and therefore the Act only protects against detriments to contractually acquired rights." *Vulcan Tools of Puerto Rico v. Makita U.S.A., Inc.*, 23 F.3d 564, 568 (1st Cir.1994), citing, *General Office Products Corp. v. Gussco Mfg., Inc.*, 666 F.Supp. 328, 331 (D.P.R.1987). The contract between Caribe and National is quite clear in the terms governing the distribution relationship. Among the terms specified in said agreement, are the following: (1) "DISTRIBUTOR hereby accepts appointment as an authorized non-exclusive distributor of National's [products] ...." (2) "DISTRIBU-

---

1. The statement of motives in Law 75 reads, in pertinent part: "The Commonwealth of Puerto Rico cannot remain indifferent to the growing number of cases in which domestic and foreign enterprises, without just cause, eliminate their dealers, concessionaires or agents, as soon as these have created a favorable market and without taking into account their legitimate interests."

TOR's territory shall be non-exclusive territory." (3) "NATIONAL reserves the right to sell the Products directly to its customers." Given the unambiguous specifications incorporated into the contract, it is far-fetched for Caribe to argue that National cannot do what the contract says it can do, namely, the selling of its products directly to its customers. The *Vulcan* Court established that all the parties involved are constrained by the terms of the agreement. Hence, Caribe must abide by the terms that it voluntarily and knowingly signed back in 1983.

■■■ "Although 'non-exclusive distributors' are entitled to protection under Law 75, it is equally true ... that Law 75 does not operate to convert non-exclusive distribution contracts into exclusive distribution contracts." *Borschow Hospital and Medical Supplies, Inc. v. Cesar Castillo, Inc.*, 96 F.3d 10 (1st Cir.1996) (citations omitted). Caribe claims, however, that *Vulcan* and *Borschow* are inapplicable to the present case because the facts of those cases dealt with principals that signed additional distributors, but did not sell directly to their distributors' customers. Such an interpretation unduly narrows the holdings of *Vulcan* and *Borschow*. This is not a case of termination of a distributor's agreement with or without just cause. Just cause is an issue only when one of the parties unilaterally terminates the distributor's contract with the supplier or acts to the detriment of the relationship *as created and defined in the distributorship agreement.* Caribe has been free to continue distributing National's products. The fact of the matter is that National has decided to exercise one of its rights under the contract that it previously—for whatever reason—had chosen not to exercise, and said right implicates direct selling, not termination nor harm to the supplier-distributor, non-exclusive relationship.

This District Court has held before that Law 75 does not prevent a supplier from establishing a wholly-owned subsidiary as an additional distributorship in Puerto Rico where a non-exclusive distributor was already operating even if the existing distributor suffered an economic harm as a consequence of said action. *Innovation Marketing v. Tuffcare, Inc.*, 31 F.Supp.2d 218, 221 (D.P.R.1998) (applying the holding in *Vulcan* within a Law 21 context). If a supplier is free to create a wholly-owned subsidiary to distribute products where a non-exclusive distributor already exists, it would be absurd to conclude that the same supplier cannot sell its products directly under similar circumstances. It does not make any practical difference whether the proceeds of the sales go directly to the supplier, or if they first go to a wholly-owned subsidiary of the supplier that eventually transfers the profits to the supplier itself.

■■■ Caribe also claims that it has a legitimate cause of action for National's allegedly tortious interference with a contractual relationship. The elements of said cause of action were established by the Supreme Court of Puerto Rico in *General Office Products v. A. M. Capen's Sons, Inc.*, 115 D.P.R. 553, 558–559 (1984): First, a contract must exist in which a third party intervenes. If the affected matter is merely an expectation of economic gain in the absence of a contract, the action does not proceed any further. Second, the defendant must have acted intentionally and with knowledge of the contract's existence. Third, the claimant has the burden of showing that it has suffered harm, and fourth, that said damage was caused by the defendant.

■■■ The agreement between Caribe and Checkpoint was an "open-ended purchase order." Complaint ¶ 33. Regardless of National's actions, Checkpoint was free at any point to stop buying adhesives from Caribe as long as a 90–day advance notice pursuant to the contract's cancellation clause was given. Checkpoint complied with said cancellation requirement. Complaint ¶ 33. In June 1997, Checkpoint informed that it would stop buying adhesives from Caribe and that it would honor the 90–day advance notice requirement. Complaint ¶ 33. Prior to October 6, 1997, National did not send directly adhesives to Checkpoint. Complaint ¶¶ 43 and 45. Since the 90–day period expired between June and October of 1997, no cause of action exists against National for tortious

interference of the contractual relationship between Caribe and Checkpoint.

## IV. *Conclusion*

Law 75 protects supplier-distributor relationships, but does not pamper distributors into acquiring rights that they have never possessed to begin with. The Court cannot be oblivious of the contract terms giving rise to distributorship arrangements. Where no termination has occurred and no actions have led astray a party from being faithful to a relationship contractually designed, no violation of Law 75 can possibly be found.[2]

**WHEREFORE,** defendant's motion to dismiss is hereby **GRANTED** and plaintiff's claims against all the defendants are hereby **DISMISSED.**

**IT IS SO ORDERED.**

---

**2.** It appears from the record that to this date ABC Corporation and John Doe have been neither summoned nor identified. Complaint ¶¶ 3–

4. Therefore, the plaintiff's claims against said defendants are hereby dismissed for lack of prosecution.