NOR–DEC, INC., et al, Plaintiffs,

v.

VIRACON, INC., et al, Defendants.

Civil No. 08–1069 (DRD).

United States District Court,
D. Puerto Rico.

Nov. 29, 2010.

---

Luis R. Rivera–Rodriguez, Luis Rafael Rivera Law Office, Michelle Annet Ra-

mos–Jimenez, Rivera Law Office, San Juan, PR, for Plaintiffs.

Luis M. O'Naghten, Akerman Senterfitt, Miami, FL, Raul M. Arias–Marxuach, Henry O. Freese–Souffront, McConnell Valdes, San Juan, PR, for Defendants.

### OPINION AND ORDER

DANIEL R. DOMINGUEZ, District Judge.

## I. PROCEDURAL HISTORY

The instant case is brought in diversity by Plaintiffs, who allege that Defendants are liable to Plaintiffs for their violation of Law 21, also known as Puerto Rico's Sales Representatives Act, P.R.Laws Ann. tit. 10, §§ 279–279h (2009). (Docket No. 1).

On April 16, 2010, Defendants filed a motion for summary judgment in the instant case (Docket No. 41). Therein, Defendants first argue that Plaintiffs Nor–Dec, Inc., Gustavo Suarez ("Plaintiff Suarez") and Marta "Kika" S. Pischner ("Plaintiff Pischner") lack standing and are not the real parties in interest in the instant case. Defendants assert that the true party in interest in the instant case is Nor–Dec International, Inc. ("Nor–Dec International"), who was not named as a plaintiff in the instant action. Further, Defendants argue that, even if Nor–Dec International, Inc., the real party in interest, was a plaintiff in the instant case, Nor–Dec International's claims would fail as it was not Defendant Viracon's ("Viracon") exclusive sales representative under Law 21. Finally, Defendants argue that Nor–Dec International, Inc. does not have a local presence in Puerto Rico and, accordingly, that the corporation's Law 21 claims have no merit for this reason as

well. On May 24, 2010, Plaintiffs opposed Defendants' motion for summary judgment (Docket No. 48). Plaintiffs assert that the failure to include the word "International" when referring to Nor–Dec in the *Complaint* was unintentional, and note that even the address listed for Plaintiffs in the *Complaint* refers to Nor–Dec as "Nor–Dec International, Inc." Plaintiffs also abandon their claims raised by Plaintiffs Pischner and Suarez, stating that they acted only on behalf of the real party in interest, Nor–Dec International. Plaintiffs further assert that Defendants failed to prove that Nor–Dec International did not reach the threshold of establishing that it was the exclusive sales representative for Viracon's products in Puerto Rico.[1] Additionally, Plaintiffs allege that Defendants showed no "just cause" for termination of the business relationship between Viracon and Nor–Dec International.

Defendants filed their reply (Docket No. 51) to Plaintiffs' opposition on June 6, 2010. First, Defendants argue that Plaintiffs' opposing statement of material facts fails to comply with the local anti-ferreting rule and, accordingly, all Defendants' proposed uncontested facts should be admitted. Additionally, Defendants note that Plaintiffs have conceded that Nor–Dec, Inc., Plaintiff Suarez and Pischner lack standing. Finally, Defendants assert that Plaintiffs did not establish a genuine issue of material fact as to Nor–Dec International's lack of exclusive sales representative status as no documentary evidence supports this proposition and as the course of dealings shows that Viracon directly promoted and sold its products to customers in Puerto Rico.

Although Plaintiffs requested leave to file a sur-reply (Docket No. 45), which the

---

**1.** However, the Court notes that Plaintiffs bear the burden of proving that they are pro-
tected under the law, as discussed *infra*.

Court subsequently granted (Docket No. 46), the sur-reply was never filed.

## II.  SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be entered where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324–325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Pursuant to the clear language of the rule, the moving party bears a two-fold burden: it must show that there is "no genuine issue as to any material facts;" as well as that it is "entitled to judgment as a matter of law." *Vega–Rodriguez v. Puerto Rico*, 110 F.3d 174, 179 (1st Cir.1997). A fact is "material" where it has the potential to change the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "genuine" where a reasonable jury could return a verdict for the nonmoving party based on the evidence. *Id.* Thus, it is well settled that "the mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. *Id.*

After the moving party meets this burden, the onus shifts to the non-moving party to show that there still exists "a trial worthy issue as to some material facts." *Cortes–Irizarry v. Corporacion Insular*, 111 F.3d 184, 187 (1st Cir.1997).

■    At the summary judgment stage, the trial court examines the record "in the light most flattering to the non-movant and indulges in all reasonable references in that party's favor. Only if the record, viewed in this manner and without regard

to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." *Cadle Co. v. Hayes*, 116 F.3d 957, 959–60 (1st Cir.1997). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prod.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Summary judgment is inappropriate where there are issues of motive and intent as related to material facts. *See Poller v. Columbia Broad. Sys.*, 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962)(summary judgment is to be issued "sparingly" in litigation "where motive and intent play leading roles"); *see also Pullman–Standard v. Swint*, 456 U.S. 273, 288, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982)("[F]indings as to design, motive and intent with which men act [are] peculiarly factual issues for the trier of fact."); *see also Dominguez–Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424, 433 (1st Cir.2000)(finding that "determinations of motive and intent . . . are questions better suited for the jury"). Conversely, summary judgment is appropriate where the nonmoving party rests solely upon "conclusory allegations, improbable inferences and unsupported speculation." *Ayala–Gerena v. Bristol Myers–Squibb Co.*, 95 F.3d 86, 95 (1st Cir.1996).

## III.  FACTUAL BACKGROUND

■    When analyzing a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party, in this case favoring Plaintiff. *See Vera v. McHugh*, 622 F.3d 17, 25–27 (1st Cir.2010); *see also Agusty–Reyes v. Dept. of Edu.*, 601 F.3d 45, 48 (1st Cir.2010); *see also Cadle Co.*, 116 F.3d at

959–60. However, while the Court "draw[s] all reasonable inferences in the light most favorable to [the non-moving party] ... we will not draw *unreasonable* inferences or credit bald assertions, empty conclusions or rank conjecture." *Vera*, 622 F.3d at 26 (internal quotations and citation omitted). Further, the Court will not consider hearsay statements nor allegations presented by parties that do not properly provide specific reference to the record. *See* L.Cıv.R. 56(e)("The [C]ourt may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment. The [C]ourt shall have no independent duty to search or consider any part of the record not specifically referenced."); *see also Morales v. A.C. Orssleff's EFTF*, 246 F.3d 32, 33 (1st Cir.2001) (finding that, where a party fails to buttress factual issues with proper record citations, judgment against that party may be appropriate); *see also Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990)("Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment.")

■ As Defendants correctly noted, Plaintiffs failed to comply with Local Rule 56, which represents this District's anti-ferreting rule. Specifically, Plaintiffs failed to admit, deny or qualify each of Defendants' proffered undisputed material facts in their opposing statement of fact. *See* Local Rule 56(c) ("The opposing statement [of material facts] shall admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts."). Accordingly, the Court deems those facts admitted for the purposes of the recitation below. *See e.g. Puerto Rico Am. Ins. Co. v. Rivera–Vasquez*, 603 F.3d 125, 131 (1st Cir.2010) (stating that "parties [who] ig-nore the strictures of [Puerto Rico's] 'anti-ferret' rule [do so] at their peril" when they fail to follow the letter of Rule 56 by clearly admitting, denying or qualifying in numerical order proposed uncontested facts); *see also A.C. Orssleff's EFTF*, 246 F.3d at 33 (affirming this District Court's grant of summary judgment where the Court refused to consider facts which were not presented in compliance with the precursor to the current anti-ferreting rule). With this determination and the aforementioned anti-ferreting rule in mind, the Court proceeds to recite the relevant facts in the instant action.

Nor–Dec was a corporation organized under the laws of the Commonwealth of Puerto Rico by Gaston Suarez and Jesus Norniella in 1966. Gaston Suarez is Plaintiff Suarez and Pischner's father; Jesus Norniella is their uncle. On October 19, 1992, Nor–Dec merged with two other companies. The only surviving business entity after the merger was M.T., Inc.

Nor–Dec International is a corporation which was organized under the laws of the State of Florida in 1984. At the time of incorporation, three officers were listed: Gaston Suarez ("Suarez"), Plaintiff Pischner and Plaintiff Suarez. Nor–Dec International's principal place of business is in Miami, Florida.

In 1997, Gaston Suarez was Nor–Dec International's Director. Plaintiff Suarez was Vice–President and Plaintiff Pischner was Treasurer. At the time when the *Complaint* was filed, Plaintiff Suarez was Nor–Dec International's President and a resident of the State of Florida. Plaintiff Suarez assumed that position in 2000. He maintained his office in Miami, Florida. At the time when the *Complaint* was filed, Plaintiff Pischner was the International Director of Nor–Dec International and a resident of the State of Florida, who maintained her office in Miami, Florida.

Viracon is a Minnesota corporation with its principal place of business in Owatonna, Minnesota. Viracon is an architectural glass fabricator which fabricates glass into high or value-added glass compositions used primarily in commercial construction. Viracon had a sales representation relationship with Nor–Dec International, which was paid in commission checks sent to the corporation's Miami, Florida office.

Luis Carbajal ("Carbajal") was employed by Viracon between January of 1995 and December of 2003. He began working for the company as a sales representative in Mexico and, by the end of 1995, had earned the position of Latin American Sales Manager. His duties included creating sales, looking for prospective independent representatives in Latin American and the Caribbean and managing sales and independent sales representatives in those regions. The commissioned independent sales representatives' purpose was to assist Viracon in selling their products directly to customers.[2] Viracon's sales representative agreements were primarily in verbal form.

At the time when Carbajal became Latin American Sales Manager, Viracon had an independent sales representative in Puerto Rico named Ron Wattonville ("Wattonville"). The relationship between Wattonville and Viracon ended between 1996 and 1997. According to Carbajal's present-day recollection, at the time when he became the Latin American Sales Manager, Viracon's Puerto Rico customers were Valcor, Tropicair, Lausell and Trapote.

In 1995, Carbajal met Pischner and Plaintiff Suarez in Minneapolis. By 1996, Pischner and Plaintiff Suarez had begun discussing a sales representative agreement with Viracon. They also discussed commission percentages, promotion, advertising and trade shows. In January of 1997, Viracon and representatives of Nor–Dec International further discussed making Nor–Dec International a representative of Viracon in Puerto Rico. On February 17, 1997, Carbajal sent Plaintiff Suarez a fax which included Viracon's "International Business Principles Outside Sales Representatives." That document was dated June 6, 1995 and stipulated that the commission due to sales representatives was 3%. The document did not state that Viracon would refrain from appointing additional sales representatives in a given territory. Further, the document did not state that Viracon would refrain from promoting, quoting, pricing and selling its products directly to customers in the region assigned to an outside sales representative, as they previously had done in Puerto Rico.

There was no written sales representation agreement between Viracon and Nor–Dec International; further, Carbajal can not recall ever issuing any document in which he characterized Nor–Dec International as an "exclusive" sales representative in Puerto Rico, nor have Plaintiffs produced such a document. Plaintiffs rely upon the deposition testimony of a Nor–Dec International employee, Eduardo Gonzalez ("Gonzalez") to support their assertion that Nor–Dec International was the

---

**2.** The precise language of the deposition testimony of a Viracon employee from which this fact is derived is as follows:

Q: How would you conduct the sales in that region in Puerto Rico?
A: We would sell directly from Viracon, so we would promote and we would quote and price. And we would interact with orders

directly from Viracon directly to the customers from our offices in Owatonna, Minnesota. And the intention of having commissioned sales representatives was to ask for assistance in us selling directly to those customers.
(Docket No. 42–7, p. 23, 1. 13–21).

exclusive sales representative in Puerto Rico. Specifically, Gonzalez testified that Carbajal told him that Gonzalez was invited to a training program in Minnesota because Nor–Dec International has "exclusivity" in Puerto Rico.[3]

Although Viracon maintained a sales representative in Puerto Rico prior to the appointment of Nor–Dec International as its representative, Nor–Dec International was Viracon's only third-party sales representative in Puerto Rico during the relevant period of time. During the course of its dealings with Viracon, Nor–Dec International absorbed some costs of doing business, including fees relating to advertising. Although Nor–Dec International absorbed promotional expenses within Puerto Rico, Viracon provided Nor–Dec International with literature and samples to distribute.

According to Carbajal, Nor–Dec International became a sales representative for Viracon in Puerto Rico on or around February 17, 1997. Although the volume of sales increased from around this time until 2004, the customer base[4] remained primarily the same as it was prior to the retention of Nor–Dec International as a sales representative. Further, the gross sales declined between 2004 and 2007. As a matter of course, Viracon did not assign competing representatives within a territory in which it already had an independent sales representative. Nor–Dec International received commissions for nearly all projects completed in Puerto Rico, even sales which were generated directly from Viracon's offices.

Nonetheless, the facts presented in the instant case show that at least one project in Puerto Rico, which involved the installation of Viracon glass in the Puerto Rico Convention Center, did not result in commission paid to Nor–Dec International. This project originated with an order for glass which was placed with Viracon's Domestic Sales Department, the installation was performed by a company from the U.S. mainland and commission was paid to Viracon's sales representative in Chicago. Plaintiffs assert that Gonzalez "made efforts to sell the Viracon glass" for the project, however.

Viracon utilized its sales representatives to represent Viracon in the market; Viracon usually engaged directly in quotation activity with the customer and Viracon determined the final selling prices. Viracon would send its employees to trade shows in Puerto Rico. However, Nor–Dec International lobbied for lower prices for customers and reported to Carbajal frequently, preparing reports regarding jobs which they pursued on a weekly basis.

---

3. Gonzalez' precise testimony as cited by Plaintiffs is as follows:

> Q: Okay. Now, when you say that Nor–Dec International had exclusivity here in Puerto Rico in relation to Viracon, what do you mean?
> A: That us, Nor–Dec—Viracon—we—Nor–Dec had that line—that exclusive line of Viracon (mispronounced) here in Puerto Rico.
> MR. ARIAS: "Viracon"
> THE INTERPRETER: Viracon
> BY MR. ARIAS Q: But again, what do you mean by the term "exclusive"?

> A: Exclusive, That's what I was told when I went for training over there in Minnesota, that this line—they said to me, "You came to this training because you have exclusivity. You have exclusivity of this glass in Puerto Rico—International," but I was the one who represented it here.
> Q: Who told you this?
> A: Juan—the person who changed his name. Luis Carvajal [sic] Seva.
> (Docket No. 42–21, p. 1–2).

4. The customer base consisted of glazing contractors, who install architectural glass and aluminum in buildings.

Prior to 2002, when Nor–Dec International hired Gonzalez as their employee in Puerto Rico, Nor–Dec International had no employees in Puerto Rico. Nor–Dec International does not maintain an office in Puerto Rico. Rather, when representatives of Nor–Dec International visited Puerto Rico, they used a conference room located in the Condado office of Architect Luis Gutierrez ("Architect Gutierrez") to make presentations about Viracon's newest products to Architect Gutierrez and other invited architects. Nor–Dec International also stored glass samples and catalogs at Architect Gutierrez' office and prepared presentations there; the stored material occupied approximately twenty five (25) square feet. Architect Gutierrez testified that Nor–Dec International did not meet with clients at his offices.[5] Nor–Dec International did not have a lease agreement with Architect Gutierrez, nor did it pay rent for use of the conference room or other space. Nor–Dec International does not have a telephone number listed in Puerto Rico, nor does Nor–Dec International have a warehouse in Puerto Rico. Instead, Nor–Dec International borrowed space in another company's warehouse[6] to store catalogs, product samples and a beam splitter machine. The total warehouse space occupied was approximately ten (10) square feet. The use of the warehouse was not regulated by a lease agreement, nor did Nor–Dec International pay for use of the space. Nor–Dec International is not registered with the Puerto Rico Department of State, nor has it ever filed tax returns in Puerto Rico or deducted Puerto Rico income taxes from Gonzalez, Suarez or Pischner's wages.

In January of 1998, Carbajal sent a fax to Plaintiff Suarez, notifying him that Nor–Dec International was receiving commissions on sales that were generated directly from Viracon's offices, although most sales at that time originated with Viracon, rather than with Nor–Dec International. Specifically, those sales were either made as a result of phone calls placed directly to Viracon by customers or by internal processes within Viracon.

In 2002, Nor–Dec International appointed Gonzalez[7] as their first employee in Puerto Rico. Gonzalez' duties included visiting Viracon's customers in Puerto Rico in order to bring them samples and catalogs, discuss projects, communicate to Viracon what was occurring in the marketplace, give Viracon feedback on upcoming projects and undertake job site inspections. Plaintiffs have not produced any record of payment to Gonzalez after March of 2004, nor have they produced any reports authored by him after 2003. The record reflects that Gonzalez was reassigned to the Dominican Republic in or around March of 2004.[8]

Joseph Effertz ("Effertz") is Viracon's Director of International Sales, who acquired this position in January of 2004. Effertz provided deposition testimony that, during the summer of 2007, Plaintiff Suarez ceased returning his phone calls and

---

**5.** Although Plaintiffs assert that Nor–Dec International met with clients at Architect Gutierrez' offices, the citations to the record which they provide in support of this proposition do not reflect their assertion.

**6.** This company was owned by Jesus Norniella, a founder of the original Nor–Dec corporation.

**7.** Gonzalez had previously worked for Nor–Dec International in another capacity.

**8.** Although Plaintiffs contest the year in which Gonzalez moved to the Dominican Republic, they relinquished this argument by failing to properly contest this fact in the manner proscribed by the Local Rules. Thus, as already discussed, the Court deemed this properly-supported fact admitted.

follow-up emails. On October 1, 2007, Effertz wrote a letter to Nor–Dec International terminating the sales representation agreement between that company and Viracon.

## IV. DISMISSAL OF CLAIMS BROUGHT BY GUSTAVO SUAREZ AND KIKA PISCHNER

In its motion for summary judgment, Defendant first requests that the Court dismiss all claims brought by Gustavo Suarez and Kika Pischner as these two Plaintiffs lack standing in the instant case. *See e.g. Pagan v. Calderon*, 448 F.3d 16, 28 (1st Cir.2006) (noting that shareholders and employees of a corporation typically do not have standing to sue for injury inflicted upon the corporation). In their opposition, Plaintiffs do not contest this, but, rather, assert that they never intended to argue that Plaintiffs Suarez and Pischner had standing in the instant case. Instead, Plaintiffs claim that they intended to name Nor–Dec International[9] as the sole Plaintiff in the instant case. Thus, as Plaintiffs themselves acknowledge that Plaintiffs Suarez and Pischner lack standing in the instant case, the Court **GRANTS** Defendant's request to **DISMISS WITH PREJUDICE** the claims brought by these Plaintiffs. The sole remaining Plaintiff at this time, therefore, is Nor–Dec International.

## V. LAW 21

Defendants next move for brevis disposition of the remaining Plaintiff, Nor–Dec International's, claim, which arises under Law 21. Law 21, the Sales Representative

Act of 1990, P.R.Laws Ann. tit. 10, § 279 *et seq*, was enacted by the Puerto Rico Legislature "in order to fill the void left by the Puerto Rico Dealer's Act ("Law 75"), P.R.Laws Ann. tit. 10, § 278 *et seq*, which did not protect sales representatives." *Orba, Inc. v. MBR Indus., Inc.*, 49 F.Supp.2d 67, 70–71 (D.P.R.1999)(citing Statement of Motives, *Laws of Puerto Rico* (Dec. 5, 1990)); *see also IOM Corp. v. Brown–Forman Corp.*, 553 F.Supp.2d 58, 64 n. 9 (D.P.R.2007). Thus, when the legislature drafted Law 21, they modeled it after Law 75. *Rafael Rodriguez Barril, Inc. v. Conbraco Indus., Inc.*, 619 F.3d 90, 93–94 (1st Cir.2010). Accordingly, it is generally accepted that jurisprudence applicable to Law 75 applies to Law 21 as well. *E.g. IOM Corp.*, 553 F.Supp.2d at 64 n. 9.

"Law 21 protects Puerto Rico sales representatives from arbitrary terminations after they create a market for their principals ... [and a]n essential element of a Law 21 claim is the existence of an **'exclusive sales representation contract.'**" *Innovation Mktg. v. Tuffcare, Inc.*, 31 F.Supp.2d 218, 220 (D.P.R.1998)(emphasis theirs)(quoting P.R.Laws Ann. tit. 10 § 279). The legislature intended that the statute protect from termination without just cause sales representatives who "assume all the operational costs which such representation entails, such as the cost of maintaining an office, exhibition rooms, cars, office personnel, phones, electricity, water, insurance, travel costs, representation costs, office supplies and municipal patents." Statement of Motives, *Laws of Puerto Rico* (Dec. 5, 1990).

---

**9.** Plaintiffs also state that their failure to properly name Nor–Dec International as a party was a mere oversight and that they always intended to name Nor–Dec International, rather than Nor–Dec, as a plaintiff. Plaintiffs support this contention with citations to the record. Defendant appears to accept this explanation in its reply and, thus, the Court does not address this issue raised by Defendant in its motion for summary judgment further herein.

■ Law 21 defines a sales representative as "an independent entrepreneur who establishes a sales representation contract of an exclusive nature, with a principal or grantor, and who is assigned a specific territory or market, within the Commonwealth of Puerto Rico." P.R.Laws Ann. tit. 10 § 279(a). However, Law 21 fails to define what constitutes an exclusive contract and local courts have yet to conclusively interpret its meaning in translated opinions properly considered by this District Court. *Innovation Mktg.*, 31 F.Supp.2d at 221. Thus, this District Court has previously looked to the principles of interpretation under Law 75 to find that "exclusivity is generally apparent either from the contract or from the arrangements agreed upon between the parties." *Id.* (citing *Ballester Hermanos, Inc. v. Campbell Soup, Co.*, 797 F.Supp. 103, 105 (D.P.R.1992) and *R.W. Intern. Corp. v. Welch Food, Inc.*, 13 F.3d 478 (1st Cir. 1994)).

## A. EXCLUSIVITY

Defendants argue that Nor–Dec International's claim should be dismissed as the sales representative relationship between Nor–Dec International and Viracon was not of an exclusive nature. Defendants point to the existence of a previous sales representative in Puerto Rico, which operated in the same territory later occupied by Nor–Dec International, as support of this argument. Defendants also note that there is no written sales representation contract and that no other documents exist granting Nor–Dec International exclusivity

within Puerto Rico. Defendants concede that a course of conduct may show a grant of exclusivity, but states that such a course of conduct did not exist here as Viracon always operated directly in the Puerto Rico market alongside Nor–Dec International. In response, Plaintiff asserts that no other third-party sales representatives operated in Puerto Rico concurrently with Nor–Dec International and that Nor–Dec International received commissions on all projects in Puerto Rico.

■ Upon review of the record, the Court agrees with Defendants' statement that none of the proffered business documents describe or document the existence of an exclusive sales representative contract between Viracon and Nor–Dec International. Additionally, it remains undisputed that, although Viracon paid commissions to Nor–Dec International for the great majority of the orders placed for projects in Puerto Rico, regardless of whether the order originated with Nor–Dec International or with Viracon, Nor–Dec International did not receive commission for at least one project, the Puerto Rico Convention Center.[10] In fact, it appears from the record that Nor–Dec International directly competed with the Viracon sales representative who ultimately made the sale. Under the jurisprudence of the Supreme Court of Puerto Rico, this type of direct competition precludes a finding that Plaintiff was, in fact, an exclusive sales representative. *See Cruz Marcano v. Sanchez Tarazona*, 2007 TSPR 198, 172 D.P.R.

10. The Court finds it pertinent to note herein that Nor–Dec International failed to assert that this project constituted the diminishment or impairment of its duties as an allegedly exclusive sales representative. *See* P.R.Laws Ann. tit. 10 § 278a (forbidding principals or grantors from "directly or indirectly perform[ing] any act detrimental to the established relationship" thereby impairing the relationship). Thus, rather than forming a potential basis for Plaintiffs' claim that Defendants violated Nor–Dec International's exclusive sales representative status, it becomes fodder for the view that such a status never existed.

526 (2007) [11] ("Therefore, in the case of a sales representative agreement protected by Law 21, the principal cannot, on his own or through a third party, perform the same tasks that he has conferred to the agent; that is, he could not operate in the territory or market of the agent.")

The only evidence of record which the Court can find indicating any degree of potential exclusivity between Viracon and Nor–Dec International is in the deposition testimony of Nor–Dec International employee Gonzalez. However, the testimony itself is vague and does not directly indicate that the relationship between the parties was that of a principal and its exclusive sales representative. Rather, it could easily be interpreted to refer to a particular line or type of glass sold by Viracon or to refer to the de-facto quasi-exclusivity enjoyed by Nor–Dec as it received commissions on nearly all sales made in Puerto Rico, even those initiated by Viracon. The Court shall not find that a trial-worthy issue of material fact exists based upon such weak evidence. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505 (finding that "the mere existence of a scintilla of evidence" is insufficient to create a genuine issue of material fact).

Further, Gonzalez began his employment with Nor–Dec International in Puerto Rico in 2002; therefore, the statement regarding exclusivity which he attributed to Carbajal could not have been made prior to this time. Thus, at least five years had passed between the initiation of the sales representation arrangement between parties and the statement attributed to Carbajal. In light of the vagueness of the testimony and its belated nature, combined with evidence showing that Viracon competed with Plaintiff in Puerto Rico, the Court finds that no genuine issue of material fact exists as to the exclusivity of the sales representation agreement between Plaintiff and Viracon and, accordingly, **GRANTS** the pending motion for summary judgment.

## B. LOCAL PRESENCE

In the alternative, Viracon also asserts that Nor–Dec International is not a protected dealer under the terms of Law 21 as it does not have sufficient "local presence" to qualify as a protected sales representative. It is uncontested that Nor–Dec International was Viracon's sales representative in Puerto Rico and that it absorbed some fees and other costs of doing business there. Further, Nor–Dec International indeed appointed an employee, Gonzalez, in Puerto Rico; however, he only represented Nor–Dec International in Puerto Rico for a fraction of the relevant time-period.

■ Notwithstanding, Nor–Dec International is incorporated in Florida and the offices of its chief officers are in Miami. Nor–Dec International is not registered with the Puerto Rico Department of State and has never filed tax returns in Puerto Rico. Further, Nor–Dec International does not rent any warehouse space or office space in Puerto Rico. Rather, Nor–Dec International uses warehouse space belonging to another corporation free-of-charge and occasionally utilizes the office space of an architect for presentations, storing brochures there as well. [12] Although Nor–Dec International employed Gonzalez to work in Puerto Rico, this employment relationship only spanned a very limited time during the duration of the

---

11. Certified translation appears on the record at Docket No. 57–1.

12. The Court also notes that the actual space utilized in the warehouse and in the office is *de minimis*, representing a very small area.

business relationship between Nor–Dec International and Viracon. The Court finds that these dealings weigh strongly against a finding of local presence as required for application of Law 21. *See* Statement of Motives, *Laws of Puerto Rico* (Dec. 5, 1990)(noting that the legislature intended the statute to protect sales representatives who assume operational costs of doing business, such as maintaining an office, in Puerto Rico); [13] *see also A.M. Capen's Co., Inc. v. Am. Trad. and Prod. Corp.*, 202 F.3d 469, 471 (1st Cir.2000)(holding in an analogous Act 75 context that where a company had no employees, no office space or warehouses and no assets in Puerto Rico, and merely sent an agent to Puerto Rico periodically, there was insufficient local presence for application of the Act). Thus, the Court finds that Plaintiffs' claim is deficient both in exclusivity and in local presence.

## VI.   CONCLUSION

Hence, for the reasons stated above, the Court **GRANTS** Defendant's motion for summary judgment (Docket No. 41) and **DISMISSES WITH PREJUDICE** Plaintiffs' claims. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

---

13. As stated by the Puerto Rico Supreme Court in an Act 75 context, cited herein by analogy, no single criterium is determinative when judging presence in Puerto Rico, nor is any criterium afforded more weight than another; the Court's inquiry as to local presence is thus a holistic one, in which the Court considers all relevant factors. *See Roberco, Inc. v. Oxford Indus., Inc.*, 22 P.R.Offic. Transl. 107, 117, 122 D.P.R. 115 (1988). As stated above, many of these factors weigh strongly towards a finding that Nor–Dec International did not maintain a local presence under the terms of Law 21. However, the Court does not base its decision on a determination that Nor–Dec International lacked a local presence as it has already determined that Nor–Dec International lacked exclusivity. Thus, the Court merely notes herein that Nor–Dec International's claim is deficient both in local presence and in exclusivity criteria.