IOM CORPORATION d/b/a/ Caribbean Wine Spirits Brokers, Plaintiff(s)

v.

**BROWN–FORMAN CORPORATION,**
Defendant(s).

Civil No. 07–1885 (FAB).

United States District Court,
D. Puerto Rico.

Nov. 8, 2007.

Miguel E. Bonilla–Sierra, Miguel E. Bonilla Sierra Law Office, San Juan, PR, for Plaintiff.

Amelia Caicedo–Santiago, Rafael Escalera–Rodriguez, Reichard & Escalera, San Juan, PR, for Defendant.

### OPINION AND ORDER

FRANCISCO A. BESOSA, District Judge.

On September 12, 2007, plaintiff IOM Corporation D/B/A Caribbean Wine & Spirits Brokers ("Caribbean") filed a complaint against defendant Brown–Forman Corporation ("Brown–Forman") in the Court of First Instance of Puerto Rico, San Juan Division, pursuant to the Puerto Rico Sales–Representatives Act. Laws of P.R.Ann.tit. 10, §§ 279 et seq. (Law 21). In its complaint, plaintiff alleged that certain agreements entered into with defendant were covered under Law 21 as sales-representative agreements, (Docket No. 4, Exs. 1 & 2). On September 21, 2007, Brown–Forman removed the suit to this Court (Docket No. 1). On October 19, 2007 Caribbean filed a verified amended complaint (Docket No. 7) in which it changed its tune. It now alleged that the two written agreements with Brown–Forman were "promotional agreements" (not sales-representative agreements) and that a pre-existing sales-representation agree-

ment existed, the terms of which the parties had decided not to include in one of the written "promotional" agreements. On October 24, 2007, Caribbean filed a motion for a temporary restraining order ("TRO") "and/or" a request for a preliminary injunction (Docket No. 8). Later that same day, the Court denied the TRO and scheduled a hearing on the preliminary injunction for October 30, 2007 (Docket No. 9). On October 26, 2007, the Court clarified that the October 30, 2007 hearing would be an evidentiary hearing (Docket No. 12). On October 29, 2007, Brown–Forman submitted a memorandum in support of its position, in which Brown–Forman argued that all of Caribbean's claims should be dismissed (Docket No. 13).

For the reasons discussed below, and in accordance with the bench order issued on October 30, 2007, the Court **denies** plaintiff's request for a preliminary injunction and **dismisses** this case. Plaintiff's claims under **Law 21** are dismissed **with prejudice** and plaintiff's claim for **breach of contract** and the covenant of good faith and fair dealing is dismissed **without prejudice.**

### Background

#### A. August 2002 Agreement

In August 2002, Caribbean and Brown–Forman entered into a letter agreement regarding "the promotion of Finlandia Vodka" in Puerto Rico ("the August 2002 Agreement") (Docket No. 7–2). The agreement called for Caribbean to use its best efforts to "perform promotional services" for Brown–Forman. (*Id.* at ¶ 1)

Pursuant to clause four of the agreement, Caribbean was to "receive a commission of $5.50 per 9–liter case of (Finlandia Vodka) sold by Ballester Hermanos, Inc. (the local distributor) to a third party retailer or account (a "depletion") in Puerto Rico for sale in Puerto Rico Duty Paid and Duty Free (military) markets." (*Id.* at ¶ 4.) The August 2002 Agreement also contained an integration clause and an arbitration clause. The integration clause provided that the agreement "covers all the terms and conditions of (Brown–Forman's) agreement with Caribbean concerning the promotional services that Caribbean will be rendering for Finlandia Vodka and supersedes <u>all other agreements</u>, whether written or oral, previously entered into. This letter agreement may be amended or changed only in writing duly signed by Caribbean and (Brown–Forman)." (*Id.* at ¶ 10; underlining added) The arbitration clause required "any controversy or claim arising out of or relating to this Agreement or the breach thereof" to be settled by arbitration administered by the American Arbitration Association in Louisville, Kentucky.[1] (*Id.* at ¶ 9)

Prior to signing the August 2002 Agreement, Caribbean had a pre-existing contractual relationship with Primalco, a subsidiary of the prior owner of Finlandia Vodka, that allegedly involved both promotion and sales activities. (Docket No. 7, p. 2–3, ¶ 5–6.) Despite the presence of the integration clause in the August 2002 Agreement, Caribbean asserts in the verified amended complaint that the parties

---

1. The complete text of the arbitration clause is as follows: "Any controversy or claim arising out of or relating to this Agreement or the breach thereof shall be finally settled by arbitration in Louisville, Kentucky administered by the American Arbitration Association under its Commercial Arbitration Rules and shall be determined in accordance with the internal laws of the Commonwealth of Kentucky applicable to contracts to be wholly performed therein. Judgement on any award rendered by the arbitrator may be entered in any court having jurisdiction thereof. Any decision rendered by the arbitrator shall be final and binding on the parties and shall not be subject to judicial review." (Docket No. 7, Ex. 1, ¶ 9.)

intentionally excluded Caribbean's sales activities from the August 2002 agreement. (*Id.,* at p. 3, ¶ 7) Caribbean also asserts that after signing the August 2002 Agreement Caribbean continued to sell Finlandia Vodka (in addition to promoting it) in accordance with verbal agreements, daily dealings, and a "mutual understanding" that was not included in the written agreement. (*Id.,* p. 4, ¶ 7–8.)

### B. June 2002 Agreement

In addition to promoting Finlandia Vodka, Caribbean agreed to provide assistance to Brown–Forman in the promotion of Jack Daniels Whiskey in a June 2002 Agreement (the "June 2002 Agreement"). (Docket No. 10, Ex. 1, ¶ 1) Pursuant to this agreement Caribbean receives a commission of $5.00 per nine-liter case of Jack Daniels sold by V. Suarez, the local distributor, in "the domestic Puerto Rico market;" it excludes duty-free outlets (unlike the August 2002 Agreement). (*Id.* at p. 2, ¶ 4) The June 2002 Agreement contains an arbitration clause identical to that found in the August 2002 Agreement. (*Id.* at p. 4, ¶ 9) Clause 10 of the June 2002 Agreement differs from the integration clause in the August 2002 Agreement, however, in that it does not contain an integration clause or any language which could be construed to supersede previous agreements.[2] There were, however, no prior agreements, verbal or otherwise, regarding Jack Daniels Whiskey, (*Id.,* at p. 3, ¶ 7 n. 2.), and plaintiff does not allege that any existed.

### C. Plaintiff's Contention

Caribbean brought this suit claiming that it is a sales representative protected under Puerto Rico's Law 21. Caribbean also claimed breach of contract and implied covenant of good faith and fair dealing under the Puerto Rico Civil Code. Caribbean has requested that the Court grant it a preliminary injunction (as available under Law 21) to prevent Brown–Forman from terminating the alleged sales representation relationship on November 1, 2007.[3] Caribbean claims that neither the August 2002 Agreement, which Caribbean attached to its original complaint filed in Commonwealth Court, nor the June 2002 Agreement, govern its alleged sales-representative relationship with Brown–Forman. Instead, Caribbean claims that the August 2002 and June 2002 agreements provided for new promotional services and that the parties intentionally excluded a pre-existing sales-representative relationship from the August 2002 Agreement. (Docket No. 7, p. 3, ¶ 7) Thus, plaintiff does not base its Law 21 claims upon either the June 2002 or August 2002 Agreements, but on a supposedly pre-existing verbal sales-representation agreement. It also argues that the arbitration clauses contained in those agreements does not apply to its pre-existing verbal sales-representation agreement.

### D. Defendant's contention

Defendant Brown–Forman argues that the August 2002 and the June 2002 Agreements together govern the entire relationship between the parties in relation to the

---

2. The complete text of clause 10 is as follows: "This Agreement covers all the terms and conditions of [Brown–Forman's] agreement with Caribbean concerning the promotional services that Caribbean will be rendering for [two varieties of Jack Daniels Whiskey ("Jack Daniels")]. This letter agreement may be amended or changed only in writing duly signed by Caribbean and [Brown–Forman]." (Docket No. 10, Ex. 1, p. 4, ¶ 10.)

3. Brown–Forman notified Caribbean on September 11, 2007 that it intended to sever their current contractual relationship on November 1, 2007 (Docket No. 7, Ex. 12).

products, Finlandia Vodka and Jack Daniels Whiskey (Docket No. 13). It further argues that the terms of the agreements leave no doubt as to the intentions of the parties and therefore not only should the two written contracts be literally enforced, but also that the parol evidence rule bars consideration of any evidence extrinsic to the agreements to show that the parties' intended that the sales-representation agreement would continue in force even after the written agreements were reached.[4] (*Id.* at p. 3–7) In addition, defendant states that the plaintiff must be held to its own allegation that the June 2002 and August 2002 agreements are not themselves sales representation agreements.[5] Thus, if the only existing agreements regarding the products at issue are not sales representative agreements, then plaintiff's Law 21 claims must fail.

Brown–Forman separately argues that if any cause of action based upon the written contracts remain (after the plaintiff filed the amended verified complaint), it must be dismissed because of the mandatory arbitration clauses. (Docket No. 13, p. 7–12)

### E. October 30, 2007 Hearing

At the preliminary injunction hearing held on October 30, 2007, plaintiff, through counsel, described the alleged sales representative work done by Caribbean in relation to Finlandia Vodka as follows: Caribbean employees negotiate orders from clients and then submit those orders to the distributor, Ballester Hermanos, Inc. (Transcript of Preliminary Injunction Hearing, Oct. 30, 2007, p. 9.) Ballester Hermanos, Inc. then supplies Finlandia Vodka to the client. (*Id.* at 7–11) Caribbean submits both oral and written orders to Ballester Hermanos, Inc. Caribbean is not the only source of sales orders for Ballester Hermanos, Inc. Clients of Ballester Hermanos, Inc. also submit orders directly to Ballester Hermanos, Inc. through Ballester's own sales staff or through a computer system. (*Id.* at 10–11.)

Caribbean is not remunerated for its sales representative services on the basis of sales, but on the basis of the same $5.50 per 9 liter-case of Finlandia Vodka, as provided for in the August 2002 Agreement. (*Id.* at 12) For example, if Ballester Hermanos sells 1,000 nine-liter cases of Finlandia Vodka, then Caribbean earns $5,500, whether or not Caribbean submits any orders to Ballester Hermanos. (*Id.* at 15–16) In other words, even if Caribbean submitted no orders, or orders for less than or more than the 1,000 cases sold by Ballester Hermanos, it still would earn $5,500, not a penny more or a penny less.

Plaintiff also asserted that the oral agreement regarding sales representation pre-dated the written agreements but was not superseded by them.[6] (*Id.* at 6–10) Plaintiff argued that the integration clause of the August 2002 Agreement applied only to promotional agreements and not to the alleged oral sales representation agreement.

---

**4.** Article 1233 of the Puerto Rico Civil Code operates to exclude extrinsic evidence where an agreement is clear, Laws of P.R.Ann.tit. 31, § 3471. The Parol Evidence Rule was repealed in 2004, precisely because the existence of article 1233 made it superfluous. 32 Laws of P.R.Ann.App. IV, R. 69 (2007 suppl.)

**5.** In the alternative, Brown–Forman states that neither the August 2002 nor the June 2002 agreements contain an exclusivity provi-

sion, which would exclude them from qualifying as sales representative contract under Law 21. Laws of P.R.Ann.tit 10 § 279(a) (Docket No. 13, p. 12–13.)

**6.** At the hearing, Plaintiff's counsel even asserted that the sales-representative agreement post-dated the written agreements, again changing his tune. The Court finds plaintiff's counsel's argument on this point to be inconsistent and contradictory.

## Discussion

### A. Article 1233 of the Civil Code

■ Article 1233 of the Civil Code "determines the manner in which courts should interpret contracts under dispute as to the meaning of their terms." *Hopgood v. Merrill Lynch, Pierce, Fenner & Smith,* 839 F.Supp. 98, 104 (D.P.R.1993), *aff'd* 36 F.3d 1089 (1st Cir.1994). Pursuant to article 1233, "[i]f the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed." P.R. Laws Ann. tit. 31 § 3471. This article has been interpreted (along with former Rule 69(B)) to bar consideration of evidence extrinsic to a written contract where an agreement is clear and unambiguous. *See, e.g., Borschow Hospital & Medical Supplies, Inc. v. Cesar Castillo, et al.,* 96 F.3d 10, 15–16 (1st Cir.1996); *Vulcan Tools of Puerto Rico v. Makita USA, Inc.,* 23 F.3d 564, 567 (1st Cir.1994). Although the Puerto Rico Legislature repealed Rule 69(B) in 2004, article 1233 alone bars consideration of extrinsic evidence where an agreement leaves no doubt as to the intent of the contracting parties. *Borschow Hosp.,* 96 F.3d at 16 ("we mean what we say, and say what we mean: extrinsic evidence of the parties' intent is inadmissible in the face of a clear and unambiguous contract term under Puerto Rico Law."); *Executive Leasing Corp. v. Banco Popular de Puerto Rico,* 48 F.3d 66, 69 (1st Cir.1995) ("[y]et to consider the extrinsic evidence at all, the court must first find the relevant terms of the agreement unclear."); *Marina Ind. Inc. v. Brown Boveri Corp.,* 114 D.P.R. 64, 72 (1983) ("[t]he strict mandate of the cited art. 1233 obliges us to abide by the literal meaning of the terms of the contract when, as in the present case, they leave no doubt as to the intention of the contracting parties.").

■ Defendant claims that its entire relationship with plaintiff is governed by the August 2002 and June 2002 Agreements. Plaintiff claims that the August 2002 and June 2002 Agreements only govern a contract for promotional services, and not an alleged oral sales representation agreement. Clause ten of the August 2002 Agreement contains an integration clause. At the hearing, plaintiff argued that this clause was limited to only agreements touching upon "promotional" services.[7] (Transcript of Preliminary Injunction Hearing, Oct. 30, 2007, p. 3.) The Court finds this to be a strained and untenable interpretation of the integration clause.

Clause ten "supersedes <u>all other agreements,</u> whether written or oral, previously entered into." (Docket No. 7, Ex. 1) (underlining supplied) This language cannot be parsed to suggest that only previous promotional agreements are superseded. Finding no lack of clarity regarding the parties intent to supersede **all** previous agreements, the Court shall not resort to extrinsic evidence to verify the existence of a previous agreement rendered moot by the August 2002 agreement. Thus, the Court finds that the August 2002 agreement is the only operative agreement between the parties in regards to Finlandia Vodka.[8]

---

**7.** Clause ten states that the agreement "covers all the terms and conditions" of Brown–Forman's agreement with Caribbean "concerning the promotional services." (Docket No. 7–2.) Specifically, plaintiff argued that the integration clause did not include a prior oral agreement to provide sales representation services. (Transcript of Preliminary Injunction Hearing, Oct. 30, 2007, p. 3.)

**8.** The Court also finds that the June 2002 Contract is the only contract between the parties concerning Jack Daniels Whiskey.

## B. Law 21

Law 21 prohibits a principal from terminating its agreement with an exclusive sales representative without just cause. P.R.Laws Ann. tit. 10, §§ 279 et seq. Resembling the Dealers' Contract Law, also known as Law 75, Law 21 protects Puerto Rican sales representatives from termination without "just cause" after they have created a market for their principals.[9]

Law 21 defines a sales representative as "an independent entrepreneur who establishes a sales representation contract of an exclusive nature, with a principal or grantor, and who is assigned a specific territory or market, within the Commonwealth of Puerto Rico." P.R.Laws Ann. tit. 10, § 279(a). Consequently, an essential element of a Law 21 claim is the existence of an "exclusive sales representation contract" entered into after December 5, 1990, the date Law 21 was enacted. P.R.Laws Ann. tit. 10, § 279(a).

The act fails to define when a sales representative relationship is considered "exclusive," and courts have yet to interpret its meaning. When interpreting contracts pursuant to Law 75, however, courts have noted that exclusivity is generally apparent either from the contract itself or from the arrangements agreed upon between the parties. *Innovation Marketing,* 31 F.Supp.2d at 221; *see also Ballester Hermanos, Inc. v. Campbell Soup, Co.,* 797 F.Supp. 103, 105 (D.P.R.1992); *R.W. Intern. Corp. v. Welch Food, Inc.,* 13 F.3d 478 (1st Cir.1994).

■ Plaintiff's Law 21 claims fail for several reasons. First and foremost,

plaintiff itself has plead that the August 2002 and June 2002 Agreements are not sales-representation agreements. Given the Court's finding that there were no separate sales representation agreements that were not superseded by the written agreements, plaintiff by its own admission has no cause of action under Law 21. Leaving aside plaintiff's averments, a perusal of the August 2002 and June 2002 Agreements shows that they are not sales representation agreements: neither agreement names Caribbean as a sales representative; neither agreement tasks Caribbean with soliciting sales; neither agreement provides for payment to Caribbean on the basis of sales; and neither agreement provides that Caribbean shall work in an exclusive capacity.

Second, assuming *arguendo* that Caribbean otherwise qualified as a sales representative, plaintiff's admissions at the October 30, 2007 hearing as to the alleged existing sales relationship demonstrated a lack of exclusivity. Plaintiff confirmed that Ballester Hermanos, Inc. is the local Puerto Rican distributor of Finlandia Vodka, and that V. Suarez is the local Puerto Rican distributor of Jack Daniels Whiskey. (Transcript of Preliminary Injunction Hearing, Oct. 30, 2007, p. 6–8.) Plaintiff explained that clients of the distributors could either place a purchase order through the sales department of the distributor, directly through a computer program, or through Caribbean's employees. (*Id.,* at 10–11) Of the three means for placing a purchase order, only one went through Caribbean. Clearly, Caribbean

---

**9.** Law 21 "is an offspring of the Dealers' Contract Law", also known as Law 75. After the Puerto Rico Supreme Court held in *Roberco, Inc. Y Roberto Colon v. Oxford Indus., Inc.,* 122 D.P.R. 115 (1988) that Law 75 does not protect sales representatives, the Puerto Rico Legislature enacted Law 21 to protect sales representatives. *Innovation Marketing, et al.*

*v. Tuffcare Inc.,* 31 F.Supp.2d 218, n. 1; *see also Tavarez v. Champion Products, Inc.,* 903 F.Supp. 268, 271 (D.P.R.1995). Because Law 21 is modeled after the Dealers' Contract Law, it is well settled that jurisprudence applicable to Law 75 is also of application in controversies which fall under Law 21. *Innovation Marketing,* 31 F.Supp.2d at 220.

did not play an exclusive role, and therefore it would not qualify for protection under Law 21.

Third, the Court finds plaintiff counsel's assertion that the alleged sales representation agreements provided for the same payment terms as the promotional agreements to be preposterous. (*Id.*, at 12) The written agreements specifically provide for Caribbean to be paid by commission based upon the overall sales by the local distributors (Ballester Hermanos and V. Suarez), not on the basis of sales. (Docket No. 7, Ex. 1, ¶ 4 & 10, Ex. 1, ¶ 4) These incentive-based contracts rewarded Caribbean for generating increased sales through its promotional activities. It was in Caribbean's best interest to forward newly generated orders to the local distributors because these orders would increase Caribbean's earnings under the August 2002 and June 2002 Agreements. Caribbean's assumption of a part-time role not specifically described in the written agreements, for no additional remuneration outside of the incentive structure in place, did not convert Caribbean into a sales representative.

C. Arbitration

■ Federal law favors the enforcement of agreements to arbitrate. 9 U.S.C. § 2; *Southland Corp. v. Keating*, 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984) ("In enacting § 2 of the federal Act, Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.") Nonetheless, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (quoting *United Steelworkers v. Warrior & Gulf Navig. Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). Therefore, a threshold question in any contract dispute involving an arbitration clause is whether both parties agreed to arbitrate the claims at issue. The question of arbitrability of a claim is an issue for judicial determination. *Id.* at 649, 106 S.Ct. 1415.

■ The arbitration clauses in the August 2002 and June 2002 agreements require plaintiff to arbitrate its claims. Both agreements contain broad clauses requiring the parties to arbitrate "any controversy or claim arising out of or relating to this Agreement or the breach thereof." (Docket Nos. 7, Ex. 1, ¶ 9 & 10, Ex. 1, ¶ 9.) These claims require the signatories to arbitrate all disputes relating to the agreements; the agreements contain no carve out for any specific type of claims.[10] Plaintiff's third cause of action for breach of contract and implied covenants of good faith and fair dealing must be arbitrated. Accordingly, the non-Law 21 claims are dismissed without prejudice.

### Conclusion

For the foregoing reasons, the Court **DENIES** Caribbean's motion for a preliminary injunction and **GRANTS** Brown–Forman's request for a **dismissal**. Caribbean's **Law 21** claims are dismissed **with prejudice**. Caribbean's **breach of contract** and implied covenant of good faith and fair dealing claim is dismissed **with-**

---

**10.** Plaintiff argued that its claims were based upon an oral sales representation agreement that did not contain an arbitration clause. (Docket No. 11, p. 6.) From the plaintiff's perspective, the arbitration clauses in the August 2002 and June 2002 agreements related only to the "promotion" of Finlandia Vodka and Jack Daniels Whiskey. (*Id.*) Plaintiff's argument is unavailing since the Court finds that the August 2002 and June 2002 agreements superseded any prior agreements between the parties.

out prejudice. Judgment shall enter accordingly.

**IT IS SO ORDERED.**