# United States Court of Appeals
## For the First Circuit

No. 09-1672

IOM CORPORATION, D/B/A CARIBBEAN WINE SPIRITS BROKERS,

Plaintiff, Appellant,

v.

BROWN FORMAN CORPORATION,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Torruella, Lipez, and Howard,
Circuit Judges.

Rubén T. Nigaglioni, with whom Nigaglioni & Ferraiuoli Law Offices, was on brief for appellant.
Rafael Escalera-Rodríguez, with whom Amelia Caicedo-Santiago and Reichard & Escalera, were on brief for appellee.

December 2, 2010

**TORRUELLA**, **Circuit Judge**.  In this diversity action, Plaintiff-Appellant IOM Corporation, d/b/a Caribbean Wine Spirits Brokers ("Caribbean") appeals the dismissal of its claim under Puerto Rico's Sales Representative Act, commonly known as Law 21, P.R. Laws Ann. tit. 10, §§ 279-279h.  Caribbean also appeals the district court's order finding that its cause of action for breach of contract and breach of the implied covenant of good faith and fair dealing was covered under the terms of an arbitration clause included in two written promotional agreements executed by the parties.  Finally, Caribbean challenges the district court's award of attorneys' fees for Defendant-Appellee, Brown Forman Corporation.

For the reasons stated below, we find that the district court properly dismissed Caribbean's Law 21 claim for failure to state a claim.  We also affirm the district court's order directing the parties to submit the breach of contract claim to arbitration. Finding that the district court did not commit plain error in granting attorneys' fees to Brown Forman, we affirm the fee award.

## I. Facts and Procedural History

The district court dismissed Caribbean's Law 21 claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  We therefore view the well-pleaded facts in the light most favorable to Caribbean, drawing all reasonable inferences in its favor. Gray v. Evercore Restructuring L.L.C., 544 F.3d 320, 324 (1st Cir. 2008).

-2-

Brown Forman is a corporation organized under the laws of the State of Kentucky. Brown Forman markets and distributes Finlandia vodka and Jack Daniel's whiskey in the United States and Puerto Rico. Caribbean is a corporation organized under the laws of the Commonwealth of Puerto Rico. As the complaint avers, in 1996, Caribbean entered into a series of oral agreements with Primalco Ltd., Brown Forman's predecessor, by which Caribbean agreed to promote Finlandia in Puerto Rico. In August 2002, Brown Forman and Caribbean formalized this commercial relationship in a written "promotion agreement," whereby Caribbean agreed to employ its best efforts to promote Finlandia vodka in Puerto Rico on Brown Forman's behalf. Under the terms of this agreement, Caribbean received a commission of $5.50 per each nine-liter case of Finlandia sold in Puerto Rico by the distributor, Ballester Hermanos. This Agreement also contained an integration clause which stated:

> Th[e] Agreement covers all the terms and conditions of [Brown Forman's] agreement with Caribbean concerning the promotional services that Caribbean will be rendering for [Finlandia Vodka] and supersedes all other agreements, whether written or oral, previously entered into. This letter agreement may be amended or changed only in writing duly signed by Caribbean and [Brown Forman].

On June 23, 2002, Brown Forman and Caribbean subscribed a written "promotion agreement," by which "Caribbean agree[d] to use its best efforts" to promote Jack Daniel's whiskey in Puerto

-3-

Rico. Per the terms of this agreement, Caribbean received a commission of $5.00 per nine-liter case of Jack Daniel's sold in Puerto Rico by the local distributor, V. Suárez. The Agreement also included an integration clause which stated:

> This Agreement covers all the terms and conditions of [Brown Forman's] agreement with Caribbean concerning the promotional services that Caribbean will be rendering for [Jack Daniel's]. This letter agreement may be amended or changed only in writing duly signed by Caribbean and [Brown Forman].

Pursuant to these written agreements, Caribbean was required to (1) provide promotional merchandise; (2) create and set up product displays in certain locations; (3) purchase materials and products locally; (4) hire personnel for promotional activities; and (5) issue invitations for special events. Both contracts were set to expire on April 30, 2006.

In March 2006, Brown Forman renewed the promotional agreements until April 30, 2007. In April 2007, Brown Forman informed Caribbean that it was re-evaluating its operations in Puerto Rico and that the company had decided to hire Caribbean on a monthly basis. On April 30, 2007, Caribbean accepted Brown Forman's proposal to renew their commercial relationship on a monthly basis. The parties thereafter engaged in a series of negotiations to restructure their commercial relationship. In the course of these negotiations, Brown Forman explained that it was planning to establish an office in San Juan that would undertake

-4-

all promotional, sales, and merchandising activities in Puerto Rico. As the complaint states, on September 10, 2007, Brown Forman confirmed its decision to terminate its prior commercial relationship with Caribbean and offered to hire Caribbean as "an exclusive broker consultant for Brown Forman['s] brands." On September 12, 2007, Caribbean filed a state-court complaint against Brown Forman seeking equitable and legal relief for an alleged unlawful termination of a sales representative contract in violation of Law 21. The original complaint stated that the parties had "a contractual relationship [whereby] IOM [Caribbean] . . . [acted as a] sales representative for Finlandia vodka and Jack Daniel's whiskey in Puerto Rico." Brown Forman removed the case to federal court based on diversity jurisdiction.

Caribbean subsequently filed an amended complaint, including both a cause of action under Law 21 for the unlawful termination of its sales representation contract and an additional cause of action for breach of contract and breach of the implied covenant of good faith and fair dealing. Caribbean claimed that although the written promotional agreements did not deal with its duties as a sales representative, "Brown-Forman [had] also entrusted Caribbean with the sale of its products as an additional endeavor under the existing commercial relationship." Regarding Finlandia vodka, the complaint averred that the parties intentionally opted to exclude Caribbean's sales activities from

the written promotional agreements.  Finally, Caribbean claimed that, pursuant to its commercial dealings with Brown Forman, Caribbean sent purchase orders to the local distributors of Finlandia and Jack Daniel's -- Ballester Hermanos and V. Suárez, respectively -- who then supplied the products to the clients.

In October 2007, Caribbean filed a motion requesting a temporary restraining order (TRO) and/or a preliminary injunction. The district court denied the TRO and scheduled a hearing to address Caribbean's request for preliminary injunctive relief. Prior to the hearing, Brown Forman opposed Caribbean's request for a preliminary injunction and requested the dismissal of Caribbean's complaint for failure to state a claim under Law 21.  Additionally, Brown Forman petitioned the court to refer Caribbean's claims to arbitration per the terms of certain arbitration clause included in the promotional agreements.

The district court held a hearing on October 30, 2007 in which the parties stated their positions regarding the nature of their commercial relationship.  At the conclusion of the hearing, the district court judge informed the parties of his decision to dismiss Caribbean's complaint for failure to state a claim.  In an opinion and order dated November 8, 2007, the district court explained that dismissal of Caribbean's Law 21 claim was proper as Caribbean had not shown that it was an exclusive sales representative as required by Law 21.  Furthermore, the district

court dismissed Caribbean's claim for breach of contract and of the implied covenant of good faith and fair dealing, finding that the arbitration clauses included in the promotional agreements required the parties to arbitrate that claim.

On April 8, 2009, the district court denied Caribbean's motion for reconsideration. The district court later issued a summary order granting Brown Forman's request for costs and attorneys' fees in the amount of $24,424.51.[1] Caribbean now appeals.

## II. **Puerto Rico's Sales Representatives Act**

In 1990, the Puerto Rico Legislature enacted Law 21 to protect sales representatives from the unjust termination of their contracts.[2] P.R. Laws Ann. tit. 10, §§ 279-279h; see also Orba Inc. v. MBR Industries, Inc., 49 F. Supp. 2d 67, 71 (D.P.R. 1999). The statute provides that "no principal or grantor may terminate [the principal-sales representative] relationship, or directly or indirectly perform any act that may impair the established

---

[1] The court granted Brown Forman $23,456.74 in attorneys' fees and $967.77 in costs.

[2] Law 21 "is modeled on the Puerto Rico Dealers Act of 1964, P.R. Laws Ann. tit. 10, §§ 278-278e ("Law 75"), which provides similar protections to distributors." Rafael Rodríguez Barril v. Conbraco Indus., Inc., No. 09-2163, 2010 WL 3491168, at *3 (1st Cir. September 8, 2010). In enacting Law 21, the Puerto Rico legislature explained that the statute purported "to protect sales representatives and other local agents who fell short of the requirements for 'dealership' status under Law 75." Re-Ace, Inc. v. Wheeled Coach Inds., Inc., 363 F.3d 51, 57 (1st Cir. 2004).

relationship, or refuse to renew said contract . . . , except for just cause."[3]  P.R. Laws Ann. tit. 10, § 279a.  If the principal terminates its commercial relationship with an exclusive sales representative without just cause, it is liable for the damages caused.  Id. § 279c (stating the criteria courts should employ to calculate damages due to an unlawful termination of a sales representation contract).

Under Law 21, a sales representative is "[a]n independent entrepreneur who establishes a sales representation contract of an exclusive nature, with a principal or grantor, and who is assigned a specific territory or market, within the Commonwealth of Puerto Rico."  Id. § 279(a) (emphasis added).  In turn, a sales representation contract is

> [an] agreement established between a sales representative and a principal, through which, and regardless of the way in which the parties establish, delineate or formalize said agreement, the party of the first part commits himself to making a reasonable effort and due diligence in the creation or expansion of a market which is favorable for the products that the principal sells, directed at capturing clientele to offer it a product or service marketed by him in Puerto Rico, and the party of the second part is bound to comply with the commitments that may result from the sales representative's efforts and

[3]  "Just cause" is defined as "[n]oncompliance of any of the essential obligations of the sales representation contract by the sales representative, or any act or omission on his/her part that may adversely and substantially affect the interests of the principal or grantor in the development of the market or the sale of merchandise or services."  P.R. Laws Ann. tit. 10, § 279(d).

> coordination and to pay the previously-accorded commission or remuneration.

Id. § 279(c).

The recent Puerto Rico Supreme Court decision in Cruz-Marcano v. Sánchez-Tarazona, 2007 TSPR 198, 2007 PR Sup. LEXIS 190 (certified translation provided by parties) outlines the characteristics a sales representative should bear to enjoy protection under Law 21.[4] According to the Puerto Rico Supreme Court, a sales representative is a business intermediary who: (1) exclusively promotes and processes contracts on behalf of a principal in an ongoing, stable manner; (2) operates in a defined territory or market; (3) is responsible for creating or expanding the market for the principal's products through promotional efforts; (4) receives commissions for his services or a pay previously agreed upon by the parties; and (5) operates as an independent merchant. See id. at *27.[5]

## III. **Standard of Review**

We review de novo the "district court's allowance of a motion to dismiss for failure to state a claim." TAG/ICIB Servs.,

---

[4] This Puerto Rico Supreme Court decision was published on the same day that the district court issued its opinion dismissing Caribbean's complaint. Thus, the district court did not rely on this decision in rendering its decision in the present case.

[5] Because no official translation of this Puerto Rico Supreme Court case is available, all pin-point citations refer to the certified translation submitted by Appellee, Brown Forman. See Appellee's Supplemental Appendix at 52-66.

Inc. v. Pan American Grain Co., Inc., 215 F.3d 172, 175 (1st Cir. 2000). We may "affirm [the] dismissal for failure to state a claim only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." Correa-Martínez v. Arrillaga-Beléndez, 903 F.2d 49, 52 (1st Cir. 1990). To overcome a motion to dismiss, plaintiff's complaint may not rely on "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

## IV. Discussion

### A. Law 21 Claim

The scope and nature of the promotional agreements bear upon Caribbean's ability to show that it is plausibly entitled to relief under Law 21. We thus begin by unpacking the parties' arguments regarding these agreements.

It is undisputed that the parties executed two written promotional agreements that do not include any terms or conditions regarding Caribbean's alleged duties as a sales representative of Finlandia and Jack Daniel's in Puerto Rico. Rather, the agreements address Caribbean's duty to promote the products by engaging in promotional and advertising efforts. Absent written provisions regarding Caribbean's duties as a sales representative, Caribbean's

-10-

claim revolves around its allegation that the parties intentionally excluded the terms of its duties as a sales representative and that this court should consider extrinsic evidence showing that "the written contracts are incomplete" and do not rule the entire and "true" commercial relationship between the parties.[6]

Article 1233 of the Puerto Rico Civil Code provides that where "the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed." P.R. Laws Ann. tit. 31, § 3471. The Article also states that "[i]f the words should appear contrary to the evident intention of the contracting parties, the intention shall prevail." Id. "In order to judge . . . the intention of the contracting parties, attention must principally be paid to their acts, contemporaneous and subsequent to the contract." P.R. Laws Ann. tit. 31, § 3472.

Construing the substantive provisions of the Puerto Rico Civil Code and Puerto Rico's former parol evidence rule, P.R. Laws Ann. tit. 32, App. IV, R. 69(B) (repealed 2004),[7] we have stated

---

[6] Caribbean claims that two letters dated March 24, 2006 and April 5, 2007, reveal that Brown Forman treated the company's agreements with Caribbean as "broker agreements," rather than "promotional agreements."

[7] Law 448 of September 23, 2004 repealed Puerto Rico's parol evidence rule, which previously stated:

When in an oral or written agreement, either public or private, all the terms and conditions constituting the true and final intention of the parties have been

-11-

that courts may not "consider[] . . . extrinsic evidence to vary the express, clear, and unambiguous terms of a contract." Borschow Hosp. & Med. Supplies, Inc. v. César Castillo Inc., 96 F.3d 10, 15 (1st Cir. 1996); see also Vulcan Tools of Puerto Rico v. Makita U.S.A., Inc., 23 F.3d 564 (1st Cir. 1994). Following this reading of Puerto Rico's rules of contract interpretation, we have declined to consider extrinsic evidence of the parties' intent when, for example, the evidence is offered to show that the written agreement was not the entire agreement between the parties. See Exec. Leasing Corp. v. Banco Popular de Puerto Rico, 48 F.3d 66, 69 (1st Cir. 1995); see also Borschow Hosp. & Med. Supplies, Inc., 96 F.3d at 15.

Caribbean contends, however, that our decisions declining to consider extrinsic evidence are no longer good law in as much as

included, such agreement shall be deemed as complete, and therefore, there can be between the parties, or successors in interest, no evidence extrinsic to the contents of the same, except in the following cases:
(1) Where a mistake or imperfection of the agreement is put in issue by the pleadings;
(2) Where the validity of the agreement is the fact in dispute.
This rule does not exclude other evidence of the circumstances under which the agreement was made or to which it is related such as the situation of the subject matter of the instrument or that of the parties, or to establish illegality or fraud.

P.R. Laws Ann. tit. 32, App. IV, R. 69(B) (repealed 2004).

the parol evidence rule of Puerto Rico was repealed in 2004.[8] Although Caribbean claims that we should re-evaluate our prior decisions concerning Puerto Rico's substantive rules of contract interpretation, it has not pointed to any decisions from the Puerto Rico Supreme Court showing that our interpretation of Article 1233 is erroneous, even in the face of the repeal of Puerto Rico's parol evidence rule.[9] However, we need not conclusively decide this issue that involves Puerto Rico's rules of contract interpretation. Even if we consider evidence tending to show that the parties intended to omit Caribbean's sales duties from the promotional agreements, the evidence is insufficient to establish that Caribbean procured and closed sales on Brown Forman's behalf in an exclusive manner as required by Law 21.

First, Caribbean's well-pleaded allegations regarding its sales activities do not support the conclusion that Caribbean had

---

[8]  Caribbean relies on a 2008 Puerto Rico Supreme Court decision, Suárez-Figueroa v. Sabanera Real, Inc., 2008 TSPR 71, 2008 WL 2604980, but an official English version of this case is unavailable and Caribbean did not file an English-language translation as required by our local rules. See 1st Cir. Loc. R. (30)(d); see also Lupu v. Wyndham El Conquistador Resort & Golden Door Spa, 524 F.3d 312, 314 n.3 (1st Cir. 2008).

[9]  We note that, in holding that extrinsic evidence was inadmissible to vary the terms of an unambiguous contract, our decisions did not rely exclusively on the parol evidence rule. To the contrary, our decisions make it clear that Article 1233 precludes consideration of "extrinsic evidence to vary the express, clear, and unambiguous terms of a contract." Borschow Hosp. & Med. Supplies, Inc., 96 F.3d at 15; see also Exec. Leasing Corp., 48 F.3d at 69.

-13-

the authority to procure and conclude sales on Brown Forman's behalf. Per Caribbean's allegations and admissions, Caribbean procured and sent purchase orders to the local distributors who then processed and concluded the sales. Caribbean also admitted that it did not place orders directly with Brown Forman. That is, the complaint lacks any factual allegations that would tend to show that Brown Forman was bound by the sales Caribbean claims that it procured and closed. At most, the well-pleaded allegations show that a principal-sales representative relationship existed between Caribbean and the local distributors. However, in order to enjoy protection under Law 21, a sales representative must have the authority to procure and conclude orders that bind the principal. P.R. Laws Ann. tit. 10, § 279(c) (stating that in a sales representation agreement, the principal "is bound to comply with the commitments that may result from the sales representative's efforts and coordination"); see also Cruz-Marcano, 2007 TSPR 198 at *23 (explaining that a Law 21 sales representative procures and concludes orders on behalf of the principal).

Secondly, Caribbean's allegations reveal that it was not compensated for its sales efforts. Rather than receiving compensation for the sales that Caribbean claims it procured and closed, Caribbean's commission was based on the terms of the promotional agreements. Under the terms of these agreements, Caribbean received a fixed percentage of overall product sales,

-14-

regardless of whether it actually procured or concluded the sales. Thus, per Caribbean's own allegations and admissions, there is no indication that Brown Forman agreed to compensate Caribbean on the basis of its purported sales representation efforts.

Finally, Caribbean's Law 21 claim fails on the pleadings as it failed to put forth sufficient facts to show that it was entrusted with <u>exclusive sales responsibilities</u> within a defined territory. Exclusivity "is generally apparent either from the contract or from the arrangements agreed upon between the parties." <u>Orba, Inc.</u>, 49 F. Supp. 2d at 71. The exclusivity requirement is met where neither the principal merchant nor third parties are allowed to sell the product in the same territory or market in which the sales representative operates. <u>Cruz-Marcano</u>, 2007 TSPR 198 at *9.

Caribbean's amended complaint mentions the exclusivity requirement in a conclusory and casual fashion. The amended complaint merely avers that "Caribbean solicit[ed] and negotiate[d] purchase orders of Finlandia vodka and Jack Daniel's whiskey with its clients in an exclusive nature." Although Caribbean claims that it was involved in the sale of more than 400,000 cases of Finlandia and 4,500 cases of Jack Daniel's, its amended complaint is devoid of any factual allegations regarding the scope of Caribbean's alleged exclusive right to procure and execute purchase orders on Brown Forman's behalf, and does not include any factual

-15-

allegations regarding any assurances from Brown Forman that would support the contention that no other sales representatives were allowed to sell the products in Puerto Rico. Surprisingly, the complaint nowhere explains the territorial scope of Caribbean's duties, an explanation that would support the assertion that Caribbean indeed was granted the right to sell the products in Puerto Rico.

In conclusion, even if we take as true Caribbean's factual allegations that the parties intended to exclude Caribbean's sales duties from the written promotional agreements, and even if we credit the allegations that Caribbean was involved in the sale of more than 400,000 cases of Finlandia and 4,500 cases of Jack Daniel's, we are bound by Caribbean's admissions that it did not send purchase orders to Brown Forman, and that it was not compensated on the basis of the sales that it allegedly made. Because the well-pleaded facts in Caribbean's complaint do not support the conclusion that Caribbean procured and closed sales on Brown Forman's behalf, we find that the complaint fails to establish that Caribbean is plausibly entitled to relief under Law 21. Additionally, the allegations fail to establish that Caribbean enjoyed exclusivity in its sales endeavors. The district court properly dismissed Caribbean's Law 21 claim for failure to state a claim.

**B. Dismissal of Caribbean's Breach of Contract Claims**

Caribbean's complaint included a separate cause of action for breach of contract and breach of the implied covenant of good faith and fair dealing. The district court dismissed this claim, finding that the arbitration clauses included in each of the promotional agreements required the parties to arbitrate the claim.[10] In relevant part, the arbitration clauses included in the promotional agreements stated that "[a]ny controversy or claim arising out of or relating to this Agreement or the breach thereof shall be finally settled by arbitration in Louisville, Kentucky administered by the American Arbitration Association . . . ."

On appeal, Caribbean claims that its breach of contract claim is not subject to arbitration because it arises out of the terms of the oral sales representation agreements. Viewing the oral sales representation contracts as separate and independent

---

[10] Because the district court issued an order directing the parties to submit the breach of contract claim to arbitration and dismissing Caribbean's underlying claims without prejudice, we have been presented with a "final decision with respect to an arbitration" that is immediately appealable under the Federal Arbitration Act, 9 U.S.C. § 16(a)(3). Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 86-87 (2000); see also Municipality of San Juan v. Corporación para el Fomento Económico de la Ciudad Capital, 415 F.3d 145, 148 (1st Cir. 2005). In these circumstances, we treat Brown Forman's request to dismiss the breach of contract claim on the ground that the claim is subject to arbitration as a request for an order compelling arbitration. See Fit Tech, Inc. v. Bally Total Fitness Holding Corp., 374 F.3d 1, 6 (1st Cir. 2004) (treating a motion to dismiss based on an arbitration clause as a request to compel arbitration where the appellant had clearly invoked the arbitration clause contained in the agreement between the parties).

agreements, Caribbean contends that the arbitration clauses included in the promotional agreements do not cover claims arising out of the oral agreements.

Caribbean's claim requires us to examine the scope of the arbitration clause. This is a legal issue that we review de novo. See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 723 F.2d 155, 159 (1st Cir. 1983), rev'd in part on other grounds, 473 U.S. 614 (1985). In evaluating the scope of the arbitration clauses, we are mindful that "all doubts are resolved in favor of arbitration; arbitration will be ordered unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Id. (internal quotation marks omitted).

Although Caribbean argues that its breach of contract claim arises out of separate and independent verbal sales representation agreements, its complaint makes it clear that the breach of contract claim arises out of Brown Forman's decision to terminate the "commercial relationship" between the parties. The complaint also shows that the commercial relationship between the parties is governed by the promotional agreements that include a mandatory arbitration clause. By Caribbean's own admissions, the oral sales representation contracts depend on, and are closely interrelated to, the promotional agreements regarding key contractual terms. For example, Caribbean readily admits that the

-18-

compensation it received for its alleged sales efforts was governed by the terms of the promotional agreements. Consequently, even if we draw the inference that the sales representation agreements are independent agreements, they would still be part of the commercial relationship and would therefore be covered under the arbitration clause.

Under these circumstances, we find that the arbitration clauses can be reasonably interpreted to cover Caribbean's claim that Brown Forman breached the commercial relationship between the parties in bad faith. The district court properly referred the breach of contract claim to arbitration.[11]

## C. Attorneys' Fees

At the conclusion of the hearing held by the court on October 30, 2007, the court stated that it would entertain a motion for attorneys' fees. Consequently, Brown Forman filed a motion requesting attorneys' fees in the amount of $23,456.75. In an

---

[11] In passing and without any developed argumentation, Caribbean argues that the arbitration clauses included in the promotional agreements contravene Law 21 in as much as they include a choice of law provision stating that arbitration is ruled by "the internal laws of the Commonwealth of Kentucky." See P.R. Laws Ann. tit. 10, § 279f ("The sales representation contracts . . . shall be construed pursuant to, and shall be governed by the laws of the Commonwealth of Puerto Rico, and any stipulation to the contrary shall be null."). We need not address this issue as Caribbean did not provide any developed argumentation regarding the validity of the choice of law provision. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). In any event, the issue may be addressed in arbitration.

order dated November 9, 2007, the district court denied Brown Forman's request, stating that Brown Forman had failed to file a verified statement of fees and expenses. The order further explained that the court had not yet granted attorneys' fees to Brown Forman, but that it had only allowed the parties to file motions regarding attorneys' fees. In compliance with the district court's order, Brown Forman filed a supplemental motion renewing its request for costs and attorneys' fees. It appended a verified and itemized statement of attorneys' fees and costs, showing that it had calculated the total amount requested by multiplying the total hours each attorney expended in the litigation by each attorney's respective hourly rate. Caribbean did not object to Brown Forman's request for attorneys' fees and costs. Absent an objection from Caribbean, the district court entered a summary order awarding the total sum in attorneys' fees that Brown Forman had requested.

We typically "review an award of fees and costs for abuse of discretion." Wennik v. Polygram Grp. Distrib., Inc., 304 F.3d 123, 134 (1st Cir. 2002). However, because Caribbean failed to oppose Brown Forman's request for attorneys' fees and did not challenge the district court's award, we review for plain error. United States v. Richard, 234 F.3d 763, 770 (1st Cir. 2000). Under the plain error standard, we may reverse the district court's award if the court engaged in "particularly egregious or obvious legal

error."  Id. (internal quotation marks omitted).  "Plain error applies only where the error results in a clear miscarriage of justice or seriously affects the fairness, integrity or public reputation of judicial proceedings."  Negrón v. Caleb Brett U.S.A., Inc., 212 F.3d 666, 672 (1st Cir. 2000) (internal quotation marks omitted).

Caribbean's challenge to the district court's grant of attorneys' fees is two-fold.  First, Caribbean argues that it has not acted obstinately or frivolously in litigating this case, as required by Puerto Rico law to support an award of attorneys' fees, see Fajardo Shopping Ctr., S.E. v. Sun Alliance Ins. Co. of Puerto Rico, Inc., 167 F.3d 1, 14 (1st Cir. 1999), and, thus, that the district court's grant of attorneys' fees constitutes reversible plain error.  Second, it contends that, even if it is assumed arguendo that awarding attorneys' fees to Brown Forman is appropriate in this case, the district court nonetheless plainly erred in computing the amount of the award, which was reached by multiplying the number of hours that Brown Forman's attorneys expended in the litigation by their hourly rate.  It is Caribbean's contention that the district court in effect employed the lodestar fee-shifting method that, per the Puerto Rico Supreme Court's decision in Corpak, Art Printing v. Ramallo Brothers, 1990

P.R.-Eng. 710,162, 125 D.P.R. 724 (1990), is not available under Puerto Rico law.[12]

Where, as here, the court's jurisdiction is based on diversity of the parties, a district court's award of attorneys' fees is governed by relevant state law, in this case Rule 44.1(d) of the Puerto Rico Rules of Civil Procedure.[13] P.R. Laws Ann. tit. 32, App. III, Rule 44.1(d); see also B. Fernández & Hnos., Inc. v. Kellogg USA, Inc., 516 F.3d 18, 28 (1st Cir. 2008) ("Attorneys' fees are recoverable in diversity cases where a state law provides the right to recover such fees.").

Under Puerto Rico Rule of Civil Procedure 44.1(d), "the award of attorney[s'] fees to the prevailing party depends exclusively on the decision of the presiding judge with regard to whether or not the losing party, or his counsel, acted in a 'frivolous or obstinate manner.'" Corpak, Art Printing, 1990 P.R.-Eng. 710,162 (emphasis omitted). This rule "was not designed as a premium to successful litigants, but rather as a penalty," Reyes v. Banco Santander de P.R., N.A., 583 F. Supp. 1444, 1446

---

[12] "The lodestar is determined by multiplying the number of hours productively spent by a reasonable hourly rate to calculate a base figure." De Jesús Nazario v. Morris Rodríguez, 554 F.3d 196, 207 (1st Cir. 2009).

[13] Rule 44.1(d) states that, "[i]n the event any party or its lawyer has acted obstinately or frivolously, the court shall, in its judgment, impose on such person the payment of a sum for attorney's fees which the court decides corresponds to such conduct."

-22-

(1st Cir. 1984), to be imposed "only . . . in those cases where the court believes that the losing party, or his counsel, has been obstinate or frivolous." Corpak, Art Printing, 1990 P.R.-Eng. 710,162 (emphasis in the original). The general standard is that "'attorney[s' ] fees should be imposed in actions which result in a litigation that could have been avoided, which prolongs it needlessly, or that obliges the other party to embark on needless procedures.'" Grajales-Romero v. American Airlines, Inc., 194 F.3d 288, 301 n.16 (1st Cir. 1999) (quoting Fernández v. San Juan Cement Co., Inc., 18 P.R. Offic. Trans. 823, 830, 118 D.P.R. 713 (1987)).

Once the court makes the threshold determination of obstinacy or frivolousness, imposition of attorneys' fees is mandatory. Correa v. Cruisers, a Div. of KCS Int'l, Inc., 298 F.3d 13, 30 (1st Cir. 2002). "The amount of the fees awarded, however, is left to the discretion of the court." Id. "[T]he degree or intensity of the obstinate or frivolous conduct is the test or determining or critical factor to be considered by the court[] when calculating the attorney[s'] fees that the obstinate or frivolous losing party shall bear." Corpak, Art Printing, 1990 P.R.-Eng. 710,162 (emphasis omitted). In addition, the court may consider "factors such as the nature of the action, the questions of law involved, the amount at issue, the time spent, the efforts and professional activity needed for the case, and the skills and reputation of the lawyers involved." Id.

-23-

Under Puerto Rico law, attorneys' fees are not meant to compensate a litigant for the total costs incurred in the law suit. Corpak, Art Printing, 1990 P.R.-Eng. 710,162. Rather, fee awards "must be commensurate to that amount which, in the opinion of the court, reasonably represents the value of th[e] [legal] services, considering the degree of obstinacy [or frivolousness] and other circumstances of the case." Asociación de Condóminos v. Trelles Reyes, 20 P.R. Offic. Trans 599, 605, 120 D.P.R. 574 (1988). Furthermore, fee-shifting methodologies -- such as the "lodestar method" -- that allow courts to determine the attorneys' fees award by multiplying the number of hours reasonably expended in defending a case by a reasonable hourly fee, regardless of the degree or intensity of the losing party's obstinate or frivolous conduct, are not available under Puerto Rico law. Corpak, Art Printing 1990 P.R.-Eng. 710,162.

The plain error standard of review imposes a high burden on Caribbean. Díaz-Fonseca v. Puerto Rico, 451 F.3d 13, 36 (1st Cir. 2006) ("[I]t is rare indeed for a panel to find plain error in a civil case.") (internal citations and quotation marks omitted). For the reasons stated below, we find that the district court did not commit plain error in its award of attorneys' fees to Brown Forman and, therefore, affirm on this issue.

First, although the district court failed to make an express determination as to Caribbean's obstinance or

-24-

frivolousness, we find that such determination is sufficiently implicit and supportable on the record to withstand plain error review. For example, in its opinion and order dated November 8, 2007, the district court correctly noted that Caribbean "[c]learly" did not meet the exclusivity requirement of Law 21, and found Caribbean's "assertion that the alleged sales representation agreements provided for the same payment terms as the promotional agreements to be preposterous." IOM Corp. v. Brown Forman Corp., 553 F. Supp. 2d 58, 64-65 (D.P.R. 2007) (emphasis added). Also, the record shows that Caribbean has put forth inconsistent arguments regarding the scope of the agreements.[14]

Caribbean argues that its actions cannot be considered obstinate or frivolous in light of the fact that, at the time it filed the complaint, the Puerto Rico Supreme Court had yet to interpret Law 21. This factor, however, is not sufficient to conclude that the district court committed plain error. Pérez Marrero v. Colegio de Cirujanos Dentistas de Puerto Rico, 1992 P.R.-Eng. 754,861, 131 D.P.R. 545 (1992) ("The fact that the issue

---

[14] In its original complaint, Caribbean alleged that certain agreements entered into with Brown Forman were sales-representation agreements. IOM Corp., 553 F. Supp. 2d at 59. Caribbean later filed a verified amended complaint in which it alleged that the two written agreements were actually "promotional agreements," and that a pre-existing oral sales-representation agreement existed. Id. at 59-60. Then, at a hearing, Caribbean asserted that the oral sales-representation agreement in fact post-dated the written agreements. Id. at 62 n.6. The district court found these arguments to be inconsistent and contradictory. Id.

is 'new,' . . . does not give a party a 'carte blanche' to act in an obstinate or frivolous manner." (emphasis omitted)). As previously explained, Caribbean presented various inconsistent arguments and its well-pleaded facts failed to establish a number of the elements clearly required for a Law 21 claim.

In light of these considerations, we find that the record supports -- under a plain error standard of review -- an implicit determination that Caribbean's conduct was frivolous. Therefore, the district court did not commit plain error in awarding attorneys' fees to Brown Forman.

Second, for the reasons stated below, we find that the amount of the attorneys' fees award granted by the district court to Brown Forman also withstands plain error review.

The Puerto Rico Supreme Court has held, while interpreting Rule 44.1(d), that the amount an obstinate or frivolous party must bear does not necessarily have to match the actual attorneys' fees paid by the prevailing party. Corpak, Art Printing, 1990 P.R.-Eng. 710,162. This is due to the fact that Rule 44.1(d) does not seek to compensate the prevailing party. Id. Rather, its main purpose is to penalize or sanction a losing party with an attorneys' fees award that is commensurate with the degree or intensity of his obstinate or frivolous conduct. Id.

A court, however, is not precluded from deciding that -- pursuant to a proper analysis under Rule 44.1(d) -- the losing

party must bear an attorneys' fees award that matches the attorneys' fees requested by the winning party, even if such amount coincides with what would otherwise be imposed if the court had calculated the award by using the "lodestar method."  In other words, the fact that the attorneys' fees award granted by a court under Rule 44.1(d) coincides with the reasonable attorneys' fees expended by the winning party is not sufficient to find that the court plainly erred, <u>provided that the award is supportable based on the losing party's obstinate or frivolous conduct and the other circumstances of the case</u>.  Such a sanction may be appropriate, for example, in a case where the court finds that the losing party's conduct was particularly frivolous, since awarding the full amount of the reasonable fees requested by the prevailing party sends a message to the losing party that the action should never have been brought.

In light of the purpose of Rule 44.1(d) and the finding of frivolousness in this case, we find that the district court did not commit plain error in determining the <u>amount</u> of the attorneys' fees award.

In sum, we find that the district court's attorneys' fees award to Brown Forman -- including the amount awarded -- withstands plain error review.  Accordingly, we affirm the district court's order on this issue.

## V. Conclusion

For the reasons stated, we affirm all of the challenged district court orders.

**Affirmed**.